No. 1,166.

## CHICAGO AND ERIE RAILROAD COMPANY *v.* BRANYAN, ADMINISTRATOR OF SIMONS.

MASTER AND SERVANT.—*Railroad.—Car.—Latent Defects.—Knowledge of.*—A complaint showing that the plaintiff's decedent, the foreman of a crew in charge of a "derrick car," was killed, without his fault, in an accident caused by latent defects in the car, not discoverable without a close inspection, and of which the employe had neither knowledge nor opportunity to acquire knowledge prior to the accident, is good upon demurrer.

SAME.—*Rules Relating to Employes.—Inspection of Machinery, etc.— Contributory Negligence.*—Where a railroad company has adopted a rule requiring every employe to see for himself, before using them, that the machinery, tools and material provided for him, or subject to his management or use, are in proper condition for the intended employment, the mere fact that an employe is in charge of a derrick car and of the crew operating the same will not justify the court in adjudging, as matter of law, that such employe is guilty of contributory negligence in failing to discover latent defects in the car which brought about an accident in which he was killed.

SAME.—*Tendency of Timber to Decay.—Master Chargeable with Knowledge.—Negligence.*—A railroad company is chargeable with knowledge of the tendency of the timber in its cars to decay, and where it knows, or, by the exercise of reasonable care, can discover, that a car in use by its employes is unsafe by reason of decay, it is chargeable with negligence.

SAME.—*Damages.—What Not Excessive.*—Upon the facts of this case, three thousand dollars are held not to be excessive damages for the negligent killing of an unmarried youth nineteen years of age.

SPECIAL VERDICT.—*Venire De Novo.—Practice.*—Findings of evidence, conclusions of law, and matters outside of the issues, in a special verdict, are not grounds for granting a *venire de novo*.

SAME.—*Negligence.—Freedom from Fault.*—In an action for personal injuries alleged to have been negligently caused by the defendant, if a special verdict shows, upon considering all the facts found, that the plaintiff was not at fault, it is sufficient, as to that matter, to support a judgment for the plaintiff.

From the Huntington Circuit Court.

*O. Gresham* and *J. B. Kenner,* for appellant.

*J. C. Branyan, M. L. Spencer* and *W. A. Branyan,* for appellee.

DAVIS, C. J.—A demurrer was sustained to the first paragraph of the complaint. The second paragraph was withdrawn during the trial.

This leaves the case standing upon the third paragraph, which we set out in full:

"The plaintiff, William A. Branyan, Administrator of the estate of Charles W. Simons, deceased, for a further and third paragraph of his complaint, complains of the Chicago and Erie Railroad Company, and says that defendant is now, and was on the 11th day of June, 1891, a corporation, owning and operating a line of railroad through the county of Huntington, in said State, and doing the business of a common carrier between the cities of Marion, Ohio, and Chicago, Illinois, and employing in her service in said business and in the repair and maintenance of her said road a large number of persons.

"Plaintiff further avers that it was then and there the duty of said corporation to furnish to said employes suitable, safe and substantial cars, locomotives and other appliances to protect said employes from danger in life and limb.

"Plaintiff further avers that decedent was on the said 11th day of June, 1891, a young man of nineteen years of age, intelligent, strong and athletic in person, in vigorous and robust health, capable of earning two and a half dollars per day, and was then and there in the employ and service of said defendant, and was then and there doing for said defendant valuable work and service.

"Plaintiff further avers that said decedent was foreman of what was known and designated as the 'derrick car,' wherein it was his duty to use said car in making repairs upon and along the line of defendant's said road, at different places, as directed by defendant and her agents.

"Plaintiff further avers that said 'derrick car' was

drawn and propelled by a locomotive, and was con-
structed of wood and iron, and carried upon trucks or
wheels placed thereunder, and was in length about forty
feet, and was constructed of beams or sills, upon which
was a tight floor, covering and concealing the beams and
timbers thereunder, upon one end of which car was the
derrick used for lifting, moving, and placing heavy
timbers, iron, and stone, and that said floor was nailed
upon said sills or stringers, and that the same concealed
the machinery and the timbers under said floor so that
its character might not be readily seen by those working
upon said car.

"Plaintiff further avers that said car was so furnished
to decedent by defendant, and he was placed thereon and
directed by defendant to operate the same and direct the
men employed thereon by defendant in the management
thereof, in making repairs upon defendant's line of rail-
road.

"Plaintiff further avers that, being then and there in
the discharge of his duty, and in obedience to the direc-
tions of the defendant, and in the discharge of duty in
his line of employment, and without fault on his part,
and without knowledge of any defects in said machinery,
and without opportunity of knowing that the same was
defective, unsafe, and dangerous, he, the decedent, on
said 11th day of June, 1891, at the city of Huntington,
was upon said 'derrick car,' when the same, by reason
of latent defects, rotten and decayed timbers, and defect-
ive brakes upon said car, and other defects in and about
said car, the same broke, tore, and was rent asunder
while in motion, and he, the said Simons, endeavoring
to save and protect his life, was caught in said breaking,
splitting and crashing debris of said car, and crushed,
bruised, maimed, and mutilated to such an extent that

within forty-eight hours thereafter, he died from said injuries then and there received.

"Plaintiff further avers that said defendant was guilty of gross negligence in furnishing to said decedent said defective car, implements and appliances in this, that the beams thereof, the stringers, and frame work supporting said floor, and that were intended to hold said car upon the trucks, had become rotten, brittle and insufficient to hold the same upon the trucks thereunder, and that the same broke loose from said trucks, tore apart, broke down and went to pieces under decedent; and that said defendant well knew, or with proper inspection could have known, prior to said wreck, that the same was so rotten, brittle, unsafe, and dangerous to all of her employes working therewith and thereupon.

"And plaintiff further avers that the death of decedent was not caused by any act of negligence on his part or on the part of any of his co-employes upon said car or locomotive.

"Plaintiff further avers that decedent left surviving him, as his heirs at law, his father, Morris T. Simons, and as his brothers, John A. Simons, Robert Simons, and Harry Simons, and his sisters, Edna B. Felter, Dessie McLinn, and Gertrude Simons.

"Plaintiff further avers that said Charles W. Simons died intestate, and that prior to the commencement of this suit this plaintiff was appointed administrator of his said estate.

"Plaintiff further avers that by reason of the said wrongful acts and carelessness and negligence of said defendant, in causing the death of decedent, the heirs of said decedent were wronged, injured and damaged in the sum of ten thousand dollars.

"Wherefore, plaintiff prays judgment against said de-

fendant in said sum of ten thousand dollars, and for costs and all relief proper in the premises.''

A demurrer was overruled to this paragraph.   An answer of general denial was filed, and on trial by a jury the following special verdict was returned:

'' We, the jury, having been directed by the judge of said court to make and return a special verdict in this cause, do find from the evidence the following facts in this our special verdict, to wit:

''*First.* That the defendant, the Chicago and Erie Railroad Company, was, on the 11th day of June, 1891, and has ever since been and now is a corporation, owning and operating a line of railroad through the county of Huntington, in the State of Indiana, and was and is doing the business of a common carrier on its railway, running between the cities of Marion, Ohio, and Chicago, Illinois, and during said period was employing in its services in said business, and in keeping in repair and maintaining its road, a large number of persons.

''*Second.* That said defendant was furnishing during said time to said employes, in the discharge of their duties, cars, locomotives and other appliances to perform labor for it in its said business and in maintaining and repairing its said road, and in the operation of the same.

''*Third.* That Charles W. Simons, plaintiff's decedent, was, on the 11th day of June, 1891, a young man of nineteen years of age, intelligent, strong and athletic in person, in vigorous and robust health, capable of earning one dollar and fifty cents per day over and above his expenses in living and clothing, and was then and there in the employ and service of said defendant, and was then and there doing for said defendant valuable work and service, and was receiving therefor two dollars and twenty-five cents per day as foreman of what was known and designated as the 'derrick car,' wherein

it was his duty to use said car in making repairs on and along the line of defendant's said road, at different places, as directed by defendant and her agents.

"*Fourth*. That said derrick car was drawn and propelled by a locomotive on defendant's tracks, which car was constructed of wood and iron, and carried on trucks or wheels placed thereunder, and was in length about thirty-three feet, and was constructed of beams or sills, upon which was a tight floor covering and concealing the beams or timbers thereunder ; upon one end of which car was the derrick used for lifting, moving, or placing heavy timbers, iron or stone, and that said floor was nailed upon said sills or stringers and that said floor concealed the machinery and timber under said floor so that its character might not be readily seen by those working upon said car, to determine its strength and durability; which car was so delivered to decedent by defendant, and he was placed thereon and directed by defendant to operate the same and direct the men employed thereon by defendant in the management thereof in making repairs on defendant's line of railroad.

"*Fifth*. That the said Charles W. Simons being then and there on said day, or the evening of said day in the discharge of his duty, and in obedience to the directions of the defendant, in the line of his employment, and without fault on his part and without knowledge of danger from any defects in the machinery or construction of said car, and without opportunity of knowing of any defective, unsafe and dangerous material in said car while operating the same at the city of Huntington, Indiana, said car, by reason of latent defects, rotten and decayed timber and defective brakes on said car, and other defects in and about said car, the same broke, tore and was rent asunder while in motion, and he, the said Simons, being upon said car, endeavoring to save and protect his

life, was caught in said breaking, splintering and crash-
ing debris of said car and the trucks thereof, and was
crushed, bruised, maimed and mutilated in his body to
such an extent that within forty-eight hours thereafter
he died of and from said injuries then and thereby re-
ceived.

"*Sixth*. We further find that said defendant was guil-
ty of gross negligence in furnishing to said decedent and
its employes said defective car, implements, and appli-
ances, in this, that the beams thereof, the stringers and
framework, that were made of wood, and that were a
part of the structure of said car, upon which the floor
thereof rested, and the portions which were intended to
hold said car on said truck, had become rotten, brittle
and insufficient to hold the same upon the trucks there-
under, and that said company, the defendant, had full
notice thereof, and that by reason of said defective, rot-
ten, and brittle material said car broke down, tore apart,
and caused the death of decedent; and that the defend-
ant, with a reckless disregard of human life, continued
to use said car after it had been warned of its unsafe and
dangerous condition.

"*Seventh*. We further find that decedent was careful
and judicious in the management of said car, and that
his death resulted not from any want of care and caution
on his part, and that he was ignorant as to the danger-
ous condition in which said car was at the time the same
broke down and went to pieces.

"*Eighth*. We further find that decedent died intes-
tate, and left surviving him as his only heirs at law, his
father, Morris Simons, and his brothers, John A. Sim-
ons, Robert Simons and Harry Simons, and his sisters,
Edna B. Felter, Dessie McLinn and Gertrude Simons;
and that after his death, and before the commencement
of this suit, William A. Branyan, the plaintiff, was duly

appointed by the Huntington Circuit Court administrator of the estate of Charles W. Simons.

"If, on the foregoing statement of facts, the law be with the plaintiff, then we find for the plaintiff, and assess his damages at three thousand dollars ($3,000), but if the law be with the defendant, then we find for the defendant."

Several motions were filed by appellant, which were overruled by the court, and judgment was rendered on the verdict in favor of appellee for three thousand dollars. The errors assigned are:

1. The court erred in overruling the demurrer of appellant to the amended third paragraph of complaint.

2. The court erred in allowing appellee to withdraw second paragraph of complaint.

3. The court erred in overruling the motion of appellant for a *venire de novo*.

4. The court erred in overruling the motion of appellant for judgment on the special verdict for the defendant below.

5. The court erred in overruling 'the motion of the appellant for a judgment for nominal damages for the appellee.

6. The court erred in overruling the motion of the appellant for a new trial.

7. The court erred in overruling the motion of the appellant in arrest of judgment.

The substance of the argument of counsel for appellant in support of the first error assigned is embraced in the following quotation, which we take from their brief:

" Eliminate the conclusions contained in this paragraph, and what do we have? Simply that Simons was a strong, intelligent man, foreman of and in control of a derrick car and the men employed thereon in making

repairs on the line of the defendant's railroad; that the floor concealed to such an extent the sills and timbers and part of the machinery that the same might not readily be seen by those working upon the car; that upon one end of the car was a derrick, used in raising heavy timbers and weights; that the defendant was negligent in that it furnished the decedent the car which had become defective through the sills becoming rotten; that the brakes were defective, and that latent defects existed.

"If the others could not have readily discovered the condition of the sills, etc., Simons certainly could have learned their condition had he made or caused to be made a close inspection. Being the foreman in charge of the car, its crew and the work performed, the presumption, in the absence of any allegation to the contrary, was that it was his duty either to inspect or see that it was inspected, especially as it is apparent it was subjected to a heavy strain in lifting with the derrick heavy weights. The allegations that he did not know the condition of the car and was free from fault are controlled by the facts, which show that he might have known its condition."

We are not able to agree with the views of counsel. The car—the framework and timbers under the floor—was rotten and defective. The defects were latent. Appellee had no knowledge or opportunity before the accident to acquire knowledge of such defects. Under the allegations in the complaint we can not presume that it was his duty to inspect the car, and that the failure to discharge this duty was a cause contributing to his injury. On the contrary, appellee had the right to repose confidence in the prudence and caution of appellant, and to rest on the presumption, as to hidden and latent defects, that the appellant had also discharged its duty by supplying a car and appliances in a reasonably safe con-

dition for the purposes for which the same were intended and used. *Wabash, etc., R. W. Co.* v. *Morgan,* 132 Ind. 430 (444); *Indiana Car Co.* v. *Parker,* 100 Ind. 181.

It is apparent from the averments that the accident was caused by the rotten and decayed condition of the car, in the respects hereinbefore mentioned, and not by reason of any "heavy strain in lifting with the derrick heavy weights." In other words, the defects in question did not arise out of the use of the car in the service in which the decedent was engaged, but were the result of the rotten and decayed condition of the timbers which constituted the framework of the car. The description of these defects sufficiently show that they could not have been discovered without a close inspection, and in the light of the facts disclosed in the complaint, when construed in connection with the general averment that he was without fault on his part, the court can not say it appears that said Simons was guilty of contributory negligence. The specific allegations do not, in our opinion, overcome this general averment. *Hochstettler* v. *Mosier Coal and Mining Co.,* 8 Ind. App. 442.

The complaint was sufficient. There is nothing in *Louisville, etc., R. W. Co.* v. *Graham, Admr.,* 124 Ind. 89, or *Brazil, etc., Coal Co.* v. *Cain,* 98 Ind. 282, that conflicts with this conclusion.

We are not able to see in what respect appellant was prejudiced by the action of the court in allowing appellee, during the trial, to withdraw the second paragraph of the complaint.

Neither was there any error in overruling the motion of appellant for a *venire de novo.* Such a motion will not be sustained unless the verdict is so defective or ambiguous that a judgment can not be rendered thereon. *Knight, Admr.,* v. *Knight,* 6 Ind. App. 268.

The legal conclusions, if any, in the verdict do not

add any strength thereto. If the special verdict does not disclose all the facts established by the evidence, the remedy is by motion for a new trial. Any facts included in the verdict which are not within the issues will be disregarded. It is not necessary to discuss these familiar propositions, but it will suffice to say that findings of evidence, conclusions of law, and matters without the issues, in a special verdict, are not grounds for sustaining a motion for a *venire de novo*. *Glantz* v. *City of South Bend*, 106 Ind. 305; *Parmater* v. *State, ex rel.*, 102 Ind. 90.

When we reach another branch of the case, the question will be considered whether the facts found are sufficient to authorize the judgment in favor of appellee.

The next error discussed is that the court erred in overruling the motion of appellant for judgment in its favor on the special verdict.

It may be conceded, at least so far as this case is concerned, that if the facts found in the verdict are not sufficient to entitle the appellee to recover, the motion should have been sustained. The contention is that the facts found by the verdict do not show that the decedent was free from fault. It is true that conclusions are blended with facts in the findings, but, in our opinion, the facts found are sufficient to sustain the judgment. The finding that he was careful is a finding of a fact descriptive of his conduct, which should be considered in connection with all the facts properly found in determining the question of due care. *Lyon* v. *City of Logansport*, 9 Ind. App. 21.

Whether the decedent was guilty of contributory negligence, depends on whether he was in fault in anything he did or failed to do which contributed to the injury. Judgment should have been rendered for appellant on the finding, unless it appears from the facts found that he was free from such fault. In relation to his conduct, the jury have found that he was ignorant of the defect-

ive and dangerous condition of the car, and that he had no opportunity to acquire such knowledge; that the floor covered the defects; that he was placed on the car and directed by appellant to operate the same, and that he was, at the time of the accident, on the car, in the discharge of his duty, engaged in the careful and judicious management of said car, in the use of the same, in making repairs in and along the line of appellant's road, at different places, as directed by appellant; that he was so acting in obedience to the directions of appellant in the line of his employment. When these circumstances are considered in connection with the fact that, by reason of the rotten and defective condition of the structure of the framework of the car upon which the floor rested, the car was rent asunder while in motion, we are of the opinion that the ruling of the trial court on this motion was correct.

The question attempted to be presented by the fifth error assigned will be considered when we come to the motion for a new trial.

The sixth error assigned brings in review the action of the trial court in overruling the motion for a new trial.

It is earnestly insisted that under the undisputed evidence in the case the fact has been clearly established that Simons was the inspector of the car; that he was charged with the duty of inspecting the car; that it was his duty to see that the car was in proper condition for the intended use; that if he continued to use it after knowing its condition or failed to discover its condition, he was in either case guilty of negligence, and there could be no recovery for the injuries sustained by him.

The evidence shows that said decedent had been, as foreman, with a gang of men engaged in operating this car from May 6th to June 11th. There was also evidence that on the 29th of May he receipted for a book of

rules, which were to take effect on the 7th of June, which contained, among others, the following:

"204. Every employe is required to exercise reasonable care to avoid injury to himself or others, and to see for himself, before using them, that the machinery, tools and material provided for him, or subject to his management or use, are in proper condition for the intended employment."

"230. Car inspectors and car repairers report to and receive their instructions from the master mechanic, or such other officer as he may designate. They must also comply with the instructions of the superintendent of motive power and of station master or yard master."

Simons was nineteen years of age. There is nothing in the evidence to indicate that his attention was called to these rules, except such inferences as may be drawn from the fact that the book containing them was delivered to him a few days before the accident, and the evidence is also silent as to whether he ever made any examination of the car for the purpose of ascertaining whether there were any latent defects therein.

The train consisted of an engine, caboose, derrick car and four or five flat cars. The flat cars had been loaded with iron pipes, but during the day all the cars had been unloaded except, perhaps, one.or two pipes on one car. The engine pulling the train was in charge of John Shindler, engineer. During the day the crew in charge of Simons were engaged in the use and operation of the derrick car in lifting and unloading the pipes, with which the train was loaded, at different points on the road. The derrick car was equipped with an engine and derrick. Simons operated the engine, and the crew under his direction operated the derrick, and did the other work in connection with the unloading. They had quit the work in which they had been engaged prior to the accident,

and the engineer in charge of the train was running the train into the yards of the company at Huntington, about 7:10 in the evening, when the accident occurred.

The evidence was in some respects conflicting. It does not clearly appear whose duty it was to inspect the car. On this question there was ground for different inferences. There was evidence, however, tending to prove that in 1889 the company then operating the road—the predecessor of appellant—had due notice of the fact that this car was unsafe; that pursuant to the directions of the train master of appellant the car had been sent to the yard and placed on the repair track for repairs three or four times; that it was the duty of the car inspector to inspect every car that came into the yard when the train stopped; that there was a corps of four or five men who remained in the yard day and night to inspect all the cars that came in. Whether the car was repaired by appellant, or whether it was examined and inspected by any of said inspectors, does not appear.

The question we are called on to determine is whether appellant is entitled to a new trial on the ground that said Simons is shown to have been guilty of contributory negligence. In order to so hold, it is necessary to decide not only that it was his duty to make an inspection of the superstructure of the derrick car to ascertain whether there were latent defects therein, but also that if he continued to use the car, after discovering its condition, or failing to discover its condition, he was in either case guilty of such negligence as to defeat a recovery for the injuries sustained by him. It is evident that the car did not break down while the iron pipes were being unloaded. Neither the engine nor derrick on this car was in operation at the time of the accident. The work in which the decedent and his crew were engaged had been completed, and the train was being run by the engineer

in charge thereof on to a side track in the yard at Huntington when the accident occurred. It may be conceded that it was the duty of Simons, under rule 204, to see for himself whether the machinery, tools and material provided for him and his crew were in proper condition for the intended employment.

So far as this duty was concerned, he may be, as contended by counsel for appellant, considered as the vice principal of the company. If it was conceded that his duty extended to the engine, derrick, and other machinery and tools which it was necessary for them to use in unloading the iron pipe, did such duty extend to the track, the other cars loaded with pipe or to the latent defects in the framework of this car beneath the floor? In other words, can the court say as a matter of law under the circumstances of this case, that it was the duty of the decedent to make a close inspection of the car, and that whether he made such inspection or not, we are bound to say that the mere fact that he was in the use and operation of such car, is conclusive on the question that he was, when injured, guilty of contributory negligence?

Without discussing this proposition at length, suffice it to say that we are not prepared to adjudge as a matter of law on the evidence, giving it the most favorable construction in behalf of appellant, that said decedent was guilty of contributory negligence. We can not say that the evidence without dispute clearly proved that Simons was the inspector of the car, or that the only reasonable inference that could be reasonably drawn by the jury from the evidence, was that there was no vice principal or inspector, so far as this duty was concerned, between the decedent and appellant.

It is next insisted that there is no evidence in the record tending to prove that appellant was guilty of

negligence. Appellant was chargeable with knowledge of the tendency of timber to decay. The duty of appellant to keep the car in a reasonably sound and safe condition was a continuing one. *Indiana Car Co.* v. *Parker*, 100 Ind. 181, 187; *Board, etc.*, v. *Legg, Admr.*, 110 Ind. 479, 483. There was evidence tending to prove that this car had been in an unsafe condition for several years, and that appellant had set aside the car for repairs on several occasions, and that appellant knew, or by the exercise of ordinary care could have discovered, that the timbers underneath the floor were decayed and rotten, and that the car was unsafe. This court would not be authorized to disturb the verdict on the evidence.

The last point we will notice is the contention that the damages assessed are excessive. There is evidence tending to prove that Simons was earning $2.25 per day; that he was in good health; that there were, at the time of his death, other members of the family younger than himself, towards whose support he had contributed to some extent at least, and that in favor of a sixteen year old sister he was carrying an accident policy of insurance for $2,000; that his mother was dead, but his father who had manumitted or emancipated him was living.

It does not appear that the decedent had accumulated any property, and the argument, therefore, is that the jury was not authorized in finding that he would have accumulated any property which would have gone to the parties named in the special verdict as his heirs at law. The contention is that there could be only a nominal recovery in this case.

The action is based on section 285, R. S. 1894. *Stewart, Admr.*, v. *Terre Haute, etc., R. R. Co.*, 103 Ind. 44. The statute expressly provides that "the damages can not exceed ten thousand dollars, and must enure to the exclusive benefit of the widow and children, if any, or next of kin, to be

distributed in the same manner as personal property of the deceased.''

The rule of damages in such case is a difficult one to apply. The damages are difficult of precise proof, uncertain and problematical. It is not necessary, however, in order to authorize a recovery in such case, that the next of kin should have a legal claim on the decedent, but it should be borne in mind that the administrator as their representative is entitled to recover only for the pecuniary value they would probably have derived, taking into account all contingencies and uncertainties, had his life not been terminated. The jury may estimate such pecuniary damages from the facts proved, in connection with their own knowledge and experience, which they are supposed to possess in common with the generality of mankind.

The verdict of the jury as to the amount will not be disturbed unless it is so large and excessive as to show that it was the result of prejudice or passion. Sections 1274, 1276, Sutherland on Damages. *Birkett* v. *Knickerbocker Ice Co.*, 110 N. Y. 504; *Grotenkemper* v. *Harris*, 25 Ohio St. 510; *Union Pacific R. W. Co.* v. *Dunden*, 37 Kan. 1; *Brunswig* v. *White*, 70 Texas, 504.

There was evidence in this case authorizing the jury to return a verdict for more than nominal damages, and the damages assessed are not such as to induce the belief that the jury must have acted from prejudice, partiality or corruption.

We have now considered all the errors that have been discussed, and we find no error in the record.

Judgment affirmed.

Filed April 19, 1894; petition for a rehearing overruled Sep. 21, 1894.