# WABASH RAILROAD COMPANY *v.* McDONIELS, ADMINISTRATOR.

[No. 22,056. Filed December 29, 1914. Rehearing denied March 25, 1915.]

1. RAILROADS.—*Regulation.—Power of Municipal Corporations.*—In the absence of express statutory authority a municipal corporation may, as an exercise of its police power, enact reasonable regulations for the public safety, and, since the operation of trains has always been attended with danger both to those operating them and to the public, a city ordinance, passed while the act of 1852 for the incorporation of cities was in force, requiring railroad companies operating any car or locomotive within the corporate limits to keep a person on such car or locomotive in position to see persons on the track and with power to stop such car or locomotive at a moment's warning, etc., was a valid exercise of the city's authority under such act to regulate practices tending to endanger persons or property, although railroads were not specifically mentioned in the act and may not have been in general use at that time. p. 107.

2. RAILROADS.—*Crossing Accidents.—Negligence.—Complaint.—Sufficiency.*—In an action for the death of a person killed on a railroad crossing, a complaint charging negligence in the operation of a train in violation of a city ordinance was not insufficient even though the ordinance was invalid, where a sufficient charge of negligence under the common law was also contained therein. p. 108.

3. DEATH.—*Action.—Emancipated Child.—Complaint.*—A complaint by an administrator for the wrongful death of a minor alleging that at the time of his death, and for a period of five years immediately previous thereto, decedent had been emancipated, made his own contracts of employment, collected all his wages, bought his clothes and supported himself in every way, etc., was not demurrable as not containing a sufficient averment of the emancipation of decedent, but if emancipation was too generally stated the remedy was by motion to make more specific. p. 109.

Wabash R. Co. *v.* McDoniels—183 Ind. 104.

4. DEATH.—*Action for Death of Minor.—Parties.*—The right of action for the wrongful death of a minor not in the service of his parents is in his personal representative for their benefit.  p. 109.

5. WORDS AND PHRASES.—*"Emancipation".*—"Emancipation" has a definite meaning, and, as applied to the relinquishment of claim by a parent to the services of a minor, means to free the child for all period of its minority from care, custody, control and service.  p. 110.

6. TRIAL.—*Verdict.—Special Findings.*—Every reasonable presumption must be indulged in favor of the general verdict, and it is not controlled by the special findings unless the latter can not be reconciled therewith.  p. 110.

7. RAILROADS.—*Crossing Accidents.—Verdict.—Answers to Interrogatories.*—Where the complaint for the death of a person killed on a railroad crossing charged negligence in the operation of the train in violation of a city ordinance requiring that a person be kept in position to see persons on the track and to stop the train at a moment's warning, and in failing to signal the approach of the train to the crossing, and it appeared from answers by the jury to interrogatories that the light on the locomotive was obscured by a cut of cars that was being pushed, that no warning was given that could be heard by decedent, that it was so dark that he could not see the train, that no one was on watch to warn him, etc., a motion for judgment on the findings notwithstanding the verdict for plaintiff was properly overruled.  p. 111.

8. RAILROADS.— *Crossing Accidents.— Contributory Negligence.— Jury Question.*—Where the evidence showed that defendant railroad company maintained a switch yard at the crossing where decedent was killed, and that at the time decedent entered upon the east track a train was passing over the west track, seventy feet away, which attracted his attention so that he did not notice the approach of the train by which he was killed, the question of whether decedent was guilty of contributory negligence in going upon any of the tracks was for the jury.  p. 112.

9. RAILROADS.—*Crossing Accidents.—Evidence.*—In view of testimony that decedent, who was struck by a train while attempting to pass over the track at a street crossing, was found some fifty or sixty feet away, that pieces of his flesh were strewn between the crossing and the place where he was found, that his head was badly injured and his body so mangled and injured that he died within five minutes after arriving at the hospital, the jury was warranted in disregarding uncontradicted testimony on behalf of defendant to the effect that decedent just after the injury stated that he was standing on the track when hit.  p. 112.

10. EVIDENCE.—*Testimony Conflicting With Law of Nature.*—A jury has the right to disregard the testimony of a witness whose statement is contrary to the laws of nature.  p. 113.

11. RAILROADS.—*Crossing Accidents.*—*Complaint.*—*Evidence.*—*Admissibility.*—Under the averments of a complaint for the death of a person run down at a railroad crossing, to the effect that the accident could have been avoided had defendant used any precaution to warn decedent of the approach of the train by bell, whistle, or light or other means, testimony as to whether defendant had lights or a watchman at the crossing was properly admitted to show the surroundings in relation to the crossing. p. 113.

12. DEATH.—*Damages.*—*Excessive Damages.*—The amount of recovery in an action for wrongful death is for the jury to determine, and, unless it appears that the jury acted from prejudice or passion, its verdict will not be disturbed on the ground of excessive damages. p. 113.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Action by William McDoniels, administrator of the estate of John W. McDoniels, deceased, against the Wabash Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Edwin P. Hammond, William V. Stuart, Dan W. Simms, Allison E. Stuart* and *Guenther & Clark,* for appellant.

*Edgar D. Randolph, Kumler & Gaylord* and *Kent & Ryan,* for appellee.

ERWIN, C. J.—This is an appeal from a judgment for $2,000 for the negligent killing of appellee's decedent. The questions presented by the assignment of errors are, (1) overruling demurrer to amended complaint; (2) overruling appellant's motion for judgment *non obstante*; (3) overruling appellant's motion for a new trial; (4) overruling appellant's motion in arrest of judgment; (5) sustaining appellee's motion for judgment on the general verdict.

This action is based on the alleged violation of a city ordinance of the city of Lafayette, approved and adopted, by said city on September 7, 1853, which provided and required, "That the person or persons managing any car or locomotive within the corporate limits of said city shall always be in a position to see persons or things on the railroad track ahead, or in front of the cars or locomotive; or shall keep some discreet person on the lookout, in a position

where he can see persons or things on such track in front of said cars or locomotives, with power to stop such locomotive or cars at a moment's warning", and declared a failure to observe such ordinance to be unlawful, and fixed a penalty for the violation thereof.

It is contended by appellant, that the complaint is insufficient for the reason that at the time of the passage of the ordinance, the city of Lafayette had no authority, under the statute, to enact such ordinance. It is conceded by appellant that the act of June 18, 1852, entitled "An act for the incorporation of cities," was in force, but contended that the act, which contains 35 clauses, contains no provisions which would authorize cities to regulate the movement or operations of railroad trains or locomotives. It is insisted by appellee that the "general welfare" clause of the act is sufficient authority for the passage of the ordinance, and that the power to protect the lives and property of their citizens is an incidental and necessary one belonging to all municipal corporations, and is within their police powers. Subdivision 3, §35, of said act is as follows: "To prevent or regulate the use of firearms, fireworks, or other sports, or other thing or practice tending to endanger person or property" 1 R. S. 1852 p. 210, §35. Section 38 of this same act provides "The common council shall have power to make other by-laws not inconsistent with the laws of this State, and necessary to carry out the objects of the corporation." 1 R. S. 1852 p. 212, §38. It was held by this court, that in the absence of express statutory authority, the enactment and enforcement of reasonable regulations of this character are recognized as a legitimate exercise of the police powers necessary to the safety of cities. *First Nat. Bank* v. *Sarlls* (1891), 129 Ind. 201, 28 N. E. 434, 28 Am. St. 185, 13 L. R. A. 481, and cases cited. It has been held by the courts of other states that ordinances of cities regulating the speed of railroad trains are police regulations, and therefore the power to pass such ordinances

need not be given in express terms, but may be implied from the power of the city to abate nuisances and provide for the general welfare. *Chicago, etc., R. Co.* v. *Haggarty* (1873), 67 Ill. 113; *Bludorn* v. *Missouri Pac. R. Co.* (1891), 108 Mo. 439, 18 S. W. 1103, 32 Am. St. 615; *Jackson* v. *Kansas City, etc., R. Co.* (1900), 157 Mo. 621, 58 S. W. 32, 80 Am. St. 650; *Stotler* v. *Chicago, etc., R. Co.* (1906), 200 Mo. 107, 98 S. W. 509. The power of the city to pass such an ordinance may be implied from the power conferred upon the city to pass "all ordinances necessary to the health, peace, convenience, good order and protection of its citizens." *Seaboard Air Line Railway* v. *Smith* (1907), 53 Fla. 375, 43 South. 235. It would be too narrow a construction of this statute to say that because "railroads", "trains", "cars" or "locomotives" were not mentioned in the statute that the city had no authority over them. No mention is made in this statute of gunpowder, but would any one insist for an instant that an ordinance, prohibiting the manufacture of gunpowder within the city limits would not be a valid exercise of the power conferred by this act, upon cities, for the safety of persons or property. The operation of trains has always been attended with danger both to those operating them and the public, and while they may not have been in general use at the time the statute was enacted, yet the clauses above referred to, were for the purpose of authorizing cities to regulate all things or "practices", whether enumerated or not, for the safety of persons or property. The ordinance in question was a valid exercise by the city, of the power conferred by statute.

The complaint, in addition to charging the negligence by reason of the violation of the city ordinance, charges the appellant with the negligent operation of the cut of 2. cars, by failing to give "any warning, by bell or whistle, or light, or other means, of the approach of said block of ten cars to said crossing, nor did defendant take any precaution to protect those about to use said cross-

ing from being struck by said block of cars," etc. This would be a sufficient charge of negligence under the common law. Where several acts of negligence are charged in a complaint, it will be good, if any of the several acts of negligence is sufficiently charged. *Pittsburgh, etc., R. Co.* v. *Terrell* (1912), 177 Ind. 447, 457, 95 N. E. 1109, 42 L. R. A. (N. S.) 367, and cases cited; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 459, 78 N. E. 1033; *New York, etc., R. Co.* v. *Robbins* (1906), 38 Ind. App. 172, 174, 76 N. E. 804.

It is contended by appellant that its demurrer should have been sustained on the further ground that there is no sufficient averment of emancipation of the decedent, and that the action should have been brought, if at all, by the appellee, as father of the decedent, for the loss of decedent's services. It is averred in the complaint that decedent "at the time of his death and for five years immediately previous thereto had been emancipated, and that during said time worked for divers persons and during all of said time and up to the time of his death collected all his wages, bought his own clothes, paid his own board, and in every way solely conducted his own affairs, collecting and receiving his wages, making his own contracts of employment, and paying for all his necessaries of every kind and character; that at the time of the death of John W. McDoniels, he was unmarried and his age was twenty years, nine months and ten days." Where the wrongful act or omission occasions the death of an adult, *or one not in the* services of his parents, the right of action is in the personal representative for their benefit. *Mayhew* v. *Burns* (1885), 103 Ind. 328, 334, 2 N. E. 793. The broad averment of the fact that decedent was emancipated would probably have been sufficient without the additional averments as to his relationship to his parents, for the five years prior to his death. *State, ex rel.* v. *Neff* (1881), 74 Ind. 146, 150, 152; *Voiles* v. *Beard* (1877), 58

Ind. 510, 511. If the fact of his emancipation was too generally stated and the appellant was not fully informed of its meaning, or there was any doubt in regard to what was intended by the declaration the only remedy was by a motion to make more specific and not by demurrer. *State, ex rel.* v. *Neff, supra; Cincinnati, etc., R. Co.* v. *Chester* (1877), 57 Ind. 297; *Pennsylvania Co.* v. *Sedwick* (1877), 59 Ind. 336; *Barrett* v. *Leonard* (1879), 66 Ind. 422. "Emancipation" has a definite meaning and should be taken in its usual and ordinary sense. §240 Burns 1914, §240 R. S. 1881. But if it can be said that in this case "emancipation" is used in a technical sense, it means, as applied to the relinquishment of the claim to the services of a minor child, to free a child for all period of its minority, from care, custody, control and service. Webster, International Dictionary; *Bristor* v. *Chicago, etc., R. Co.* (1905), 128 Iowa 479, 104 N. W. 487, 488; Words and Phrases (2d Series) 243.

It is further insisted by appellant that the complaint is bad because the facts averred show the decedent was guilty of contributory negligence as a matter of law. The complaint is sufficient in this respect to withstand a demurrer.

It is next insisted that the court erred in overruling the motion for judgment *non obstante,* (1) because the ordinance in question was void, the city having no authority to enact such ordinances, (2) because even if the ordinance was valid the answers to interrogatories conclusively show appellee's decedent was guilty of contributory negligence. Every reasonable presumption must be indulged in favor of the general verdict, and the special findings override the general verdict only when both can not stand. *City of Jeffersonville* v. *Gray* (1905), 165 Ind. 26, 74 N. E. 611, and cases cited; *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132, 73 N. E. 253, and cases cited; *American Car, etc., Co.* v. *Adams* (1912), 178 Ind. 607, 99 N. E. 993;

*Cleveland, etc., R. Co.* v. *Van Laningham* (1913), 52 Ind. App. 156, 166, 97 N. E. 573, and cases cited.

The jury found in its answers to interrogatories that appellant was backing a cut of ten cars easterly upon its track and across the crossing where decedent was killed; that the engine was equipped with headlights at both ends; that the lights on the engine were obscured by the box cars being pushed in front of it; that no warning was given that could be heard by decedent; that no person was upon the front end of the cut of cars being moved; that no person was in position to warn decedent of the approach of the train; that the crossing was dark so that decedent could not have seen the approach of the train owing to the darkness; that decedent was not standing upon the track when hit by the cars; that he was crossing at a regular crossing; that the engine, with its lights was 400 feet from the crossing at the time the box car on the end of the cut struck decedent; that the bell on the engine was ringing, but that decedent could not hear it; that decedent was a man of ordinary intelligence, with good eyes and ears; that appellant took no precaution to warn or notify persons using or about to use the crossing; no whistle was sounded; that no light was placed or held where it could have been seen by decedent; no person was ahead or in position to see persons on the track ahead.

The court did not err in overruling appellant's motion for judgment on the special findings.

It is urged that the court erred in overruling appellant's motion for a new trial, (1) on the grounds that the verdict is not sustained by sufficient evidence and is contrary to law; (2) on account of admitting incompetent evidence; (3) that the damages are excessive; (4) on account of giving improper instructions; (5) in refusing to give instructions tendered by appellant.

Appellant insists that the evidence shows contributory negligence, in that it was established by the evidence that

a train of thirty-nine cars was passing on the west track at the time decedent undertook to cross the switch track on which he was killed. The evidence is that the appellant maintained a switch yard at this crossing and had seven tracks across this street; that at the time decedent undertook to cross the east track there was a train of cars passing on the west track 70 feet away, which attracted his attention, and while he was walking across the east track was hit and killed. It is insisted that decedent should not have gone upon any of the tracks while a train was passing even though it was 70 feet away. This might have been negligence on the part of decedent and it might not have been. This question was rightly submitted to the jury which found that decedent was not guilty of contributory negligence in so passing upon the east track.

Appellant complains that the undisputed evidence is that decedent, just after the injury said to one of its employes that he was standing on the track, when hit, and that the jury disregarded this testimony. By an examination of the evidence on this point we find that one man, a brakeman in the employ of appellant testified that such a statement was made by decedent to him; that he was the first man to reach the decedent after the injury; another witness testified he was the first to reach decedent; both being witnesses for the appellant. Other witnesses testified that decedent was found some fifty feet or sixty feet northeast of the crossing; that pieces of flesh were found all along between the crossing and the place where decedent lay; and that when found he had a hole in the left side of the head so large that when parties attending were putting ice on his head a piece fell into it; the abdominal wall was torn so that the bowels protruded; the right leg was completely crushed off and entirely separated from the body, at a point within six or eight inches of the hip; the left leg crushed near the hip and that decedent died within five minutes after reaching the hospital. To

believe that this man, injured as he was, could give an intelligent account of the accident would test human credulity to the limit. The jury has the right to disregard the testimony of a witness whose statement is contrary to the laws of nature. *Emrich Furn. Co.* v. *Byrnes* (1909), 44 Ind. App. 341, 87 N. E. 1042; *Macon Consol. St. R. Co.* v. *Barnes* (1901), 113 Ga. 212, 38 S. E. 756; *Chicago, etc., R. Co.* v. *Vremeister* (1904), 112 Ill. App. 346; 17 Cyc. 818.

It is further alleged as a cause for a new trial that the court erred in permitting testimony to go to the jury as to whether the company had lights or a watchman at the crossing. This was proper and competent to go to the jury for the purpose of showing the surroundings, the same as any other physical fact in relation to the crossing. There is no claim by appellee that appellant's failure to maintain lights or watchmen at the crossing was the proximate cause of the injury. Appellee avers in this complaint that ''If defendant had taken any precautions to warn decedent of the approach of the cut of cars, or any warning of the approach of the block of cars by bell or whistle or light or other means, or had taken any precaution to warn or notify or protect decedent when about to use the crossing as provided by the ordinance, the accident could have been averted.'' This allegation of the complaint authorized the introduction of the evidence complained of as showing just how the appellant operated its trains at this place on the night of the accident.

Excessive damages are also made the cause for a new trial. The amount of recovery is a matter for the jury and unless it appears that the jury acted from prejudice or passion the verdict will not be disturbed. *Malott* v. *Shimer* (1899), 153 Ind. 35, 54 N. E. 101, 74 Am. St. 278, and cases cited; *Chicago, etc., R. Co.* v. *Branyan* (1894), 10 Ind. App. 570, 586, 37 N. E. 190, and cases cited.

In the last case cited there was a recovery of $3,000. The facts as to age of the decedent and all other facts as to wages, were similar to the case at bar, and the court held that the damages were not excessive.

Error is predicated upon the giving of instructions Nos. 5 and 6 requested by appellee, upon the grounds that the ordinance in question was void. What we. have heretofore said in relation to the ordinance disposes of this question.

Complaint is also made as to the giving of certain other instructions tendered by appellee, and by the court on its own motion, and the refusal to give certain instructions tendered by appellant. After a full investigation and examination of the record in this case, we are of the opinion that no reversible error was committed in giving or refusing to give instructions.

The evidence sustains the verdict. Judgment affirmed.

NOTE.—Reported in 107 N. E. 291. As to what is an excessive verdict for death by wrongful act, see 18 Ann. Cas. 1209. As to the right to charge two or more acts of negligence in one count in a complaint or declaration in an action for damages for personal injuries, see Ann. Cas. 1913 C 101. See, also, under (1) 33 Cyc. 665; (2) 33 Cyc. 1058, 1053; (3) 31 Cyc. 281, 644; (4) 13 Cyc. 329; (5) 15 Cyc. 484; (6) 38 Cyc. 1927; (7) 33 Cyc. 1142; 38 Cyc. 1927; (8) 33 Cyc. 1121; (9, 10) 17 Cyc. 1915 Anno. 818-new; (11) 33 Cyc. 1081; (12) 13 Cyc. 375.