## T. J. Moss Tie Company *v.* Hite.

[No. 23,866. Filed November 12, 1920. Rehearing denied February 3, 1921.]

1. MASTER AND SERVANT.—*Injuries to Servant.*—*Employers' Liability Act.*—*Complaint.*—*Sufficiency.*—In a servant's action for injuries under the Employers' Liability Act (Acts 1911 p. 145, §8020a, *et seq.* Burns 1914), complaint *held* to sufficiently plead that the employer was engaged in a business in this state in which it was employing five or more persons, that its agents, servants and employes were guilty of negligence in the matter of making and keeping the place of work and appliances safe, under the changing conditions of employment, and that an in-

T. J. Moss Tie Co. *v.* Hite—190 Ind. 198.

jury to plaintiff resulted in whole or in part from such negligence. p. 203.

2. JUDGMENT.—*Personal Injuries.—Verdict for Some Defendants.—Right of Other Defendant to Judgment.*—In an employe's action for personal injuries, where the complaint alleged that the defendants, each and all of them, did or omitted to do the things alleged, a verdict for some of the defendants did not require the rendition of judgment for the other defendant found by the jury to have been negligent. p. 204.

3. JUDGMENT.—*Motion for Judgment.—Questions Presented.*—Where in an action against several defendants for personal injuries, the verdict was for all the defendants except one, the latter's motion for judgment on the verdict presented no question under the evidence, but only the question whether the verdict had decided against movent the issues joined on the pleadings. p. 204.

4. MASTER AND SERVANT.—*Injuries to Servant.—Verdict.—Evidence.—Sufficiency.*—In an action against barge owners and a tie manufacturer for injuries to an employe of the latter, where verdict was rendered for the barge owners, evidence *held* sufficient to sustain a verdict against the employer and in favor of the barge owners. p. 204.

5. MASTER AND SERVANT.—*Injuries to Servant.—Action Under Employers' Liability Act.—Instructions.—Assumption of Risk.*—In an action under the Employers' Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914), for injuries to an employe who was injured while unloading cross-ties from a barge into a freight car because the gangplank was insecurely fastened, *held* that defendant on proper request was entitled to instructions on the subject of assumed risk. p. 207.

6. APPEAL.—*Review.—Refusal of Instructions.—Cure·by Other Instructions.*—In an action for personal injuries, the refusal of the court to instruct on assumed risk was not cured by the giving of instruction that plaintiff could only recover upon proof that negligence of defendant was a proximate cause of the injury. p. 210.

7. TRIAL.—*Refusal of Instructions.—Cure by Other Instructions.*—Correct instructions on one subject embraced within the issues cannot be a substitute for instructions covering a different subject also in issue. (J. Wooley Coal Company v. Tevault [1918], 187 Ind. 171, explained and disapproved in part.) p. 210.

8. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Instructions.—Sufficiency.*—In an employe's action for personal injuries under the Employers' Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914), instructions that if

plaintiff's injury was caused by any of the risks incident to the work, and not by the alleged negligence of the employer, there could be no recovery, *held* sufficient on the assumption of risk, although the expressions "assumed risk" and "perils incident to work" were not used.    p. 211.

9.    TRIAL.—*Instructions.—Contributory Negligence.—Burden of Proof.*—In an employe's action for personal injuries under the Employers' Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914), instructions ·on burden of proving contributory negligence which failed to inform the jury that they must consider all the evidence, whether introduced by plaintiff or defendant, .*held* sufficient, in the absence of a request for more complete instruction and in view of other instructions given. p. 212.

10.    TRIAL.—*Incomplete Instructions.—Duty to Request Proper Instructions.*—Where instructions, though correct as to the matters embraced therein, are incomplete, it is the duty of the party desiring more complete instructions to tender them, with a proper request that they be given.    p. 212.

From Vanderburgh Superior Court; *John H. Foster,* Special Judge.

Action by Fred Hite against the T. J. Moss Tie Company.    From a judgment for plaintiff, the defendant appeals.    *Affirmed.*

*Philip W. Frey, John D. Welman and Phelps F. Darby,* for appellant.

*Joel E. Williamson, Carl J. Wilde* and *Edward E. Meyer,* for appellee.

EWBANK, J.—This was an action by the appellee to · recover for injuries sustained when he fell while walking a thirty-foot plank with a cross-tie on his shoulder and the tie fell upon and broke his leg.

Appellant complains that the trial court erred in overruling its demurrer to the amended complaint, which alleged in substance the following (among other) facts: That the defendant is, and for twenty years has been, a corporation organized and existing under the laws of the State of Missouri, and is now, and for twenty years has been, engaged in the manufacture, buying and sell-

ing of cross-ties, and now has, and on and for years prior to October 31, 1913, had an agency for the conduct of its business at Evansville, Indiana, from whence it purchased cross-ties at Evansville, and at other points in Kentucky, Illinois and Indiana, which ties it caused to be shipped in barge loads to Evansville; that on October 31, 1913, certain codefendants—in whose favor a verdict was directed and was returned—were engaged in the transportation business on the Ohio river at the port of Evansville, in which they used towboats and barges; that in conducting said business each of the defendants employed more than five men; that on said date the defendants caused a barge load of cross-ties belonging to appellant to be transported on the Ohio river to Evansville and moored to the Louisville and Nashville Railroad incline, the tracks of which were laid to the waters' edge and connected with the track of said railroad; that the barge was so moored for the purpose of unloading the cross-ties from the barge into cars which had been placed on the incline for that purpose; that five cars had been placed on the incline; and that one was so negligently placed that it extended beyond the end of the barge; that the proper way to place the cars was so that a gangplank could be extended from the door of the car into the barge at right angles to each; that the floor of said car on-which plaintiff was put to work by defendants was five feet lower than the top of the gunwales of said barge, and the end of the car upstream was five feet higher than its other end, and the said gunwale sloped five feet from the end to the middle of the barge; that defendants caused a gangplank thirty-five feet long, twelve and one-half inches wide and two and one-half inches thick to be laid from the gunwale into the door of the car in such manner that the end of the plank in the car was ten feet further down stream than the end placed on the

barge; that by reason thereof a space of three or four inches was between the floor of the car and that end of the plank (at one side), and, to prevent the plank from tilting when walked upon, it was necessary, in order to fill such space, to place a piece of wood or something under the lower side of the plank and make it fast to the plank, which defendants negligently failed to do; that defendants undertook to fill such space with a "chuck" of timber five feet long and two to four inches thick; that the ordinary way to moor such barge was by means of lines sufficient in number and so attached to objects on shore and to each end and the middle of the barge as to prevent it from moving in any direction; but that defendants negligently failed to attach a line to the stern of the barge; that as the cross-ties were removed the lines became slack and the defendants negligently failed to tighten them, but permitted them to remain so slack that the barge could and did move up and down; that defendants knew the barge was in an unsafe condition by reason of such insufficient number of lines and such slackening of the lines, and "were requested" to take out the slack and to make the barge so it could not move, but failed and neglected to do so; that plaintiff was employed by the defendants on said date to assist in unloading cross-ties from the barge and loading them into said car, and was directed by defendants to load them into said car, and the only means of passing from the barge into the car was over and upon said plank, which he proceeded to do; that other employes of the defendant to the number of twenty were doing likewise; that the work of loading and unloading the cross-ties into all of said cars was done under the direction and control of the defendants, and all of said twenty persons, including the plaintiff, were subject to the control of defendants' officers and agents who were there present; that by reason of the

negligent and careless manner in which the barge was moored, it moved up and down and in and out, and thereby caused the plank to work off the chuck and the chuck to work out from beneath it, which would not have occurred if the defendants had not negligently permitted said mooring lines to become slack; that plaintiff took a cross-tie weighing 150 pounds from the barge upon his shoulder, and, while he was walking along upon said plank in going into said car, the plank tilted by reason of having no support under the lower side, and caused him to lose his balance and fall, whereby he sustained certain injuries, and by reason of them was confined to his bed for six months and was prevented from going about his daily business and rendered unable to perform manual labor and was put to great expense for medical and surgical attention, medicines, nursing and care.

Appellant urges that the foregoing facts are not sufficient to constitute a cause of action at common law. That is undoubtedly true. But it clearly appears

1. from the record that the trial court construed the complaint as a complaint by an employe against the employer of more than five persons, to recover damages for an alleged negligent violation by the employer of the Employers' Liability Act, Acts 1911 p. 145, §8020a *et seq.* Burns 1914. As so construed we think it sufficiently appears therefrom that the appellant company was engaged in a business in this state in which it was employing five or more persons, and that agents, servants and employes of appellant were guilty of negligence in the matter of making and keeping the place to work and appliances safe, under the changing conditions of the employment, and that an injury to plaintiff resulted, in whole or in part, from such negligence. *J. Wooley Coal Co.* v. *Tevault* (1918), 187 Ind. 171, 118 N. E. 921, 119 N. E. 485.

It is urged that, upon the return of a verdict in favor of the codefendants of appellant, alleged to have been in the business of towing barges on the river, the court ought to have rendered judgment in favor of appellant, because (it is asserted) the evidence showed that whatever appellant did or failed to do was by the hand of such codefendants and their servants. But the complaint, as above set out, wholly fails to allege or show that appellant is charged with liability for the acts and omissions of its codefendants. Each averment is that the "defendants," each and all of them, did and omitted to do the things alleged. The averments do not bring this case within the rule declared by *Indiana, etc., Torpedo Co.* v. *Lippincott Glass Co.* (1905), 165 Ind. 361, 75 N. E. 649, as to the effect of the verdict under the issues joined in that case. But even there the relief granted was to order a new trial, and not to give judgment in favor of the alleged employer. Appellant's motion for judgment upon the verdict presented no question under the evidence, but only the question whether such verdict had decided against appellant the issues joined on the pleadings and it was properly overruled. The same question is also sought to be presented by the motion for a new trial as to the weight and effect of the evidence tending to show that whatever negligent acts and omissions the appellant was chargeable with were the acts and omissions of its codefendants. But we think there was evidence sufficient to sustain the verdict, if the jury believed appellee's witnesses.

There was some evidence tending to show that the appellee was employed and put to work by appellant's local agent; that twenty men were employed at that time, unloading appellant's cross-ties from the barge into five cars that stood on a track alongside the barge;

that the barge was 120 feet long, and the five cars, together, were 190 feet long, and the end car, on which appellee was working, extended past the end of the barge so that a plank from near the end of the barge had to be laid angling down stream to reach the car door; that appellee was taking cross-ties from near the stern, or downstream end of the barge; that the car was on a grade, so that the downstream end was lower, and the gunwale of the barge sloped from the downstream end toward the middle, and that the plank was fastened to the gunwale in such fashion that it lay flat on this latter slope, and the downstream side of it tilted where it lay on the sill of the car door, so that a loose chock was placed under the downstream side of the plank in the car to hold it steady; that the proper way to moor a barge was with a line to each end, extending out on the bank, diagonally up and down the river respectively, and a third line to the middle, directly out on the bank, all made fast to objects on shore; that there was no line to the stern of this barge, the end at which appellee was working; that earlier in the day the barge had swung away from the cars and had pulled a gang plank out of one of the cars (possibly not the one in which plaintiff was working); that appellant's local agent was then requested to put out a stern line and to tighten the lines, but did not do so, and that the barge moved and thereby pulled the plank off the chock, and this was what caused plaintiff to fall. But there was also evidence tending to prove that there were three lines, to both ends and the middle of the barge, respectively, drawn tight, and securely fastened to objects on the bank; that the slack had been taken up from the lines that afternoon on putting out a stern line; that unloading the ties from the barge caused it to rise in the water, and that the river was rising at the time, and as it rose the barge floated higher on the bank, and as

the barge floated free from the shore it could move a little, however tightly moored; that a stern line was put on and made fast after appellee began work and before he was hurt; that he worked from half past one till between four and five in the afternoon; that as so moored with three lines the barge could not move out from the shore, but could only swing in; that no matter how securely fastened with lines to the shore, the barge will move lengthwise, up and down the river, if a high wind blows or a steamboat passes on the river; that a rise in the river will permit the boat, as it swings toward the bank, to move up and down the river a little; that the current at that point was setting across from the Kentucky shore and running up stream, and moved the barge a little up and downstream; that boats were continually passing that place on the river; that all day the barge moved a little from time to time; that appellant just engaged appellee and three others to load that particular car without control or supervision, at a cent and a half for each tie they carried, and that nobody representing appellant told appellee to go to work or gave him any instructions or ordered him to walk on the plank, and the pay for all the ties put into the car was handed over in a lump sum to one of the four, and they divided it, and that those four men put out the plank, fixed it, and put the chock under it themselves; that the said companions of appellee paid him for the ties that he carried; that appellee was racing with one of the other workmen, and had "gained a tie on him" just before he fell; that the board would spring down two feet in the middle when a man crossed it with a tie and spring up straight again when he was across, and that the chock repeatedly came out from under it, and appellee knew that fact and waited for it to be replaced; that appellee was fifty years old, and had been a tie carrier for twenty years, and was earning $60

per month; that appellee knew the barge would swing, where it was moored and had been swinging in the water.

Under this evidence it would have been competent for the jury to have found facts from which it must follow, as matter of law, that appellee's injury was wholly due to risks which he had assumed under his employment, and not at all to any negligence of the appellant or of anybody for whose acts and omissions appellant could be held liable, while at the same time finding that such injury was due to a movement of the plank that drew it and the chock apart, so as to permit the plank to tip where the end lay in the car door, caused either by the springing of the plank under the weight of the men carrying cross-ties, or by the motion of the boat under stress of the current, the winds, and the waves from passing boats, when it was tied up as securely as was possible. Or the jury might have found from such evidence that the quick springing of the plank as appellee ran across it with a heavy tie on his shoulder made such work dangerous, and that the injury resulted directly from that cause, without fault of appellant.

The appellant asked the court to give a number of instructions, of which the court refused twelve, to which refusal the appellant duly reserved exceptions, and such refusal is properly presented for review on appeal. As duly qualified by other instructions to the effect that appellee (the plaintiff) was entitled to recover if any negligence of his employer caused or contributed to cause his injury, without his fault, two of these requested instructions correctly declared the law to the effect that when the defendant entered upon his employment he assumed the risks and dangers ordinarily incident thereto, and that the mere fact that the work undertaken was more dangerous than

some other employment would not change the rule that such dangers and risks were assumed, and that if appellee's injury was due to such assumed risks he could not recover. And it was error to refuse to give them unless such refusal was made harmless by other instructions given on the subject to which they related.

The trial in the circuit court was completed, and the jury was instructed on March 18, 1915, and after the case was appealed the appellee filed his brief on October 20, 1915. Neither this court nor the Appellate Court had then given a construction to the provisions of the Employers' Liability Act, Acts 1911 p. 145, *supra,* in relation to how far the doctrine of assumption of risk was still in force. And in appellee's brief, under No. 6 of his "points and authorities," he declared that: "The court properly omitted the element of assumed risk from all of its instructions. Assumed risk of hidden dangers and latent defects did not exist at common law. Assumed risk of dangers or hazards inherent or apparent is abolished by statute." And it is a fair presumption that he took a similar attitude in the trial and argument of this case, and that appellant was prejudiced by the refusal of the said instructions unless the record affirmatively shows that such refusal was harmless. Having refused the foregoing requested instructions, the trial court did not give any instructions directly mentioning "assumed risks" or "assumption of risk," nor any which declared in general terms that an injury to an employe might be caused by dangers incident to the employment for which the master would not be liable. But it did instruct the jury (court's No. 11) that if plaintiff's injury was an accident, or was caused by a misstep, stumble, or some act of the plaintiff, and was not caused by the negligence of the defendant, or (court's No. 12) was caused solely by the chock that was under the end of the plank slip-

ping out from under it, in case it moved and worked out, the jury should find a verdict for the defendant, and (appellant's No. 11) that if the barge was moored as an ordinarily prudent person in the exercise of ordinary care would have moored it under the circumstances, and the lines did not slacken and cause the plank to tilt, the verdict should be for the defendant, even though the plank did tilt from other causes; and (appellant's No. 22) that if, on the day of the injury, there was a sudden or rapid rise in the river, which would necessarily move the barge, and if it was impossible under such conditions to keep the barge from moving, and if the movement of the barge was so caused, and if this movement caused the plaintiff to fall, the verdict should be for the defendants; and (appellant's No. 5) that if the car was not properly placed opposite the barge, or if there was a difference between the height of the floor of the car and the top of the barge, such facts would not justify a verdict against the defendant, and (appellant's No. 6) neither would the angling position of the plank as laid from the barge to the car justify such a verdict, and (court's No. 13) that if the plank was so placed that it lay with one side or edge higher than the other, so that it was not level, and such position alone caused the injury, the verdict should be for the defendant; and (appellant's No. 8) that the defendant was not liable for such injuries as were unforeseen, and could not be reasonably anticipated in the exercise of ordinary care, and if the plaintiff's injuries could not have been foreseen and provided against in the exercise of ordinary care the verdict should be for the defendants; and (appellant's No. 19) that the mere fact that plaintiff was injured did not create a presumption that the defendant was negligent as charged, but (court's No. 4) that in order for plain-

tiff to recover it must appear from a preponderance of the evidence that his injuries were caused by the negligence alleged in the complaint; and (court's No. 7) that the plaintiff had the burden of proof to show negligence on the part of the defendant; and (court's No. 8) that if plaintiff was employed, as alleged, and the defendant negligently failed to use a sufficient number of lines to prevent the barge from swaying and moving, and as a proximate result of such failure the barge swayed and moved, and by reason thereof, without fault on his part, the plaintiff in the performance of his duties sustained the alleged injury, the verdict should be for the plaintiff.

That the appellant (defendant) on proper request was entitled to instructions on the subject of assumed risk, does not admit of doubt.

Neither could the mere giving of correct instructions that plaintiff could only recover upon proof that negligence on the part of the defendant was a proximate cause of the injury excuse the court from the duty to give instructions on the subject of assumption of risk, if properly requested to do so. Correct instructions on one subject embraced within the issues cannot be a substitute for instructions covering a different subject also in issue. Neither does the case of *J. Wooley Coal Co.* v. *Tevault, supra,* so hold, when the language used therein is properly construed. But what that case does hold, which is the law, is that where the instructions given have already sufficiently informed the jury that there can be no recovery on account of the risks assumed by the plaintiff under his employment, the refusal, on request, to give a properly worded instruction to that effect is not reversible error. In so far, if at all, as the language of the opinion in *J. Wooley Coal Co.* v. *Tevault, supra,* might be understood to hold that giving correct

T. J. Moss Tie Co. *v.* Hite—190 Ind. 198.

instructions on the subject of negligence, in an action by an employe against his employer, under the act of 1911, *supra,* can excuse the refusal to give correct instructions on the subject of the assumption of risk, when properly requested, such language is disapproved.

But in this case the instructions which were given by the court, at the request of appellant and on its own motion, took up the different risks incident to the work of unloading ties from the barge into the car by crossing the plank, at the time of the injury, and specifically declared that if the injury was caused by either or any of them, and not by the alleged negligence of the employer (appellant), there could be no recovery.   We think that the jury was thereby sufficiently instructed that the plaintiff could not recover for injuries caused by the perils incident to his employment, even though there was no declaration to that effect in general terms, and though the expressions "assumed risk" and "perils incident to work" were not used.   Having given instructions which fully and clearly informed the jury that plaintiff was not entitled to recover for injuries caused by each of the risks incident to his employment, there was no error in refusing to give further instructions, in more general terms, to the same effect.

8.

Instructions Nos. 7 and 10, given by the court upon its motion, read as follows:

"No. 7.   The burden of proof is upon the plaintiff to show negligence on the part of the defendant.   The burden of proof is upon the defendant to show contributory negligence on the part of the plaintiff.

"No. 10.   Before the jury should find that the plaintiff was guilty of contributory negligence the burden is upon the defendant to prove by a fair preponderance of the evidence that the plaintiff was guilty of con-

tributory negligence and that such negligence proximately contributed to his injuries."

The court did not give, neither was it asked to give, a further instruction to the effect that in determining the question of contributory negligence the jury 9. should consider all of the evidence, whether introduced by the appellee or by the appellant. But it did give instructions which defined what was meant by a preponderance of the evidence, and what was the effect of such a preponderance and the consequences which would follow if the evidence was equally balanced on a question of fact. And while it would have been proper to instruct the jury that they must consider all of the evidence introduced by both sides, if such an instruction had been asked, there was no error in giving these two, which were correct as 10. far as they went, and were merely incomplete.

If the appellant wished more complete instructions to be given, he should have tendered them, with a proper request.

There was evidence from which the jury might have found that appellee was fifty years old, and was, and for twenty years had been, a tie carrier, earning $60 per month; that his leg was broken, by reason of which he was in the hospital six weeks with a weight on his leg, and suffered much pain, so that he slept only on one or two days; that after his injury he could not carry ties, but was so crippled that up to the time of the trial, seventeen months after the injury, he was not able to work; that the injury made him unable to lift weights, and unable to do much walking without pain, and that his leg would never cease to be tender and painful; that his doctor bill was $195 and his hospital bill was $45.50. No reason is shown for believing that the jury was controlled by passion, prejudice, or partiality in returning its verdict, and this court will not disturb the verdict

on the ground of excessive damages. *Wabash R. Co.* v. *McDoniels* (1915), 183 Ind. 104, 113, 107 N. E. 291. The judgment is affirmed.