## MACON CONSOLIDATED STREET RAILROAD COMPANY
### *v.* BARNES.

1. Proof of facts collaterally pertinent to the issue on trial is, though they are
   not alleged in the plaintiff's petition, admissible in his behalf.
2. Evidence of the violation by a railroad company of a valid municipal ordi-
   nance is, if the same was a part of the res gestæ of an occurrence under in-
   vestigation, admissible, and may be made the subject-matter of appropriate
   instructions to the jury.
3. It is not erroneous to instruct a jury that, relatively to passengers, it is the
   duty of a railway company to use "extreme care and caution," when in con-
   nection with the words quoted the court employs language appropriately lim-
   iting and explaining their meaning.
4. The rule of law requiring railway companies to exercise extraordinary dili-
   gence in protecting their passengers from injury applies as well to the con-
   struction and maintenance of tracks as to the operation of cars thereon.

5. A judge, in stating to a jury what are the plaintiff's contentions, may properly call their attention to any allegations of the petition which have not been demurred to and stricken therefrom, and which are supported by evidence.

6. An instruction, in the trial of an action against a railway company for personal injuries, that if the plaintiff shows a prima facie right to recover, it is incumbent upon the defendant "to establish, by a preponderance of the evidence, one of two facts, either that it was without negligence, or that the plaintiff could have avoided the consequence of the negligence by the exercise of ordinary care," is not rendered erroneous because of a failure to charge in the same connection upon the law of contributory negligence and apportionment of damages, the more especially when the legal rules bearing upon this subject are, in connection with instructions given upon the measure of damages, fully and fairly stated.

7. When in such a trial the court explains to the jury what constitutes an unavoidable accident, and instructs them that if the injury to the plaintiff was the result of such an accident the defendant is not liable, an instruction in the language above quoted is not open to the objection that "it did not permit the jury to consider the defense that said injury was caused by an unavoidable accident."

8. A jury is not bound to accept as true the literal statements of witnesses, but may reject the same, when inconsistent with reason or with facts which have been duly established to their satisfaction.

9. It is not erroneous to refuse to give in charge a written request setting forth a proposition which is an absurdity, though it may be manifest that this is the result of a palpable and unintentional error upon the part of counsel in framing the request.

10. Even if error be committed in compelling a party to produce a paper, it will not, if harmless to him, entitle him to a new trial.

11. The requests to charge not dealt with above were, so far as legal and pertinent, sufficiently covered by the general charge given in the present case ; the charge as a whole was a fair presentation of the law, and embraced no error which could have been prejudicial to the defendant.

12. The evidence warranted a finding in the plaintiff's favor, and, after a careful review of the·same, it does not affirmatively appear that the trial court abused its discretion in holding that the verdict was not excessive in amount.

Argued February 11, — Decided April 24, 1901.

Action for damages.　Before Judge Nottingham.　City court of Macon.　April 21, 1900.

*Bacon, Miller & Brunson* and *Hardeman, Davis, Turner & Jones,* for plaintiff in error.

*Dessau, Harris & Harris, Roland Ellis,* and *A. W. Lane,* contra.

LUMPKIN, P. J.· This case, because of its importance, has received very careful attention.　We have, however, after a thorough examination of it, become convinced that its chief element of importance lies in the fact that the verdict is for so large an amount. Indeed, the question whether or not the verdict is excessive has

given us more serious concern than any other.    A. E. Barnes brought an action against the Macon Consolidated Street Railroad Company, for personal injuries caused by his being violently thrown from the platform of a car upon which he was riding, and which was suddenly derailed in going around a curve.    The jury returned a verdict in his favor for $10,000.    The company made a motion for a new trial, which was overruled, and it excepted.    We will now undertake to deal with every material point made therein.

1. The plaintiff was sworn as a witness in his own behalf.    He minutely described his injuries, and after stating, in effect, that they were very severe, testified further that he had never recovered from them, that his health was still seriously impaired, and that he continued to suffer constant and intense pain.    He also testified, in substance, that he had resumed, as far as he was able, his ordinary work.    In this connection his counsel asked him the question, "What makes you work?" and he answered, "I have got to do it; I have a wife and three children to support, and nothing to support them with but what I make by my work."    Upon objection by the defendant's counsel to this answer, the court ruled that while it was not material how many children the plaintiff had, and that the jury need not consider that, it was admissible for the witness to state that he had a family to support, as a reason why he kept up his work.    To this conclusion we agree.    The contention of counsel for the company, that the fact that Barnes had a dependent family in no way bore upon his right to recover and shed no light upon the measure of his damages, was certainly well founded; but this fact was relevant for the purpose of explaining his conduct, and, under the circumstances, had a direct bearing upon the weight and credibility of his testimony.    He was on the stand asking the jury to believe that he was then and there still a sufferer from the injuries of which he complained, and at the same time informing them that he had, before the trial, entered upon the performance of his regular work, which he described as extremely arduous and laborious.    Did he not thus subject himself to the charge of insincerity in claiming that he had not been restored to health and vigor?    Who could fairly say he did not?    Why, then, was it not legitimate and proper for him to explain this apparent inconsistency by stating that he was obliged to work in order to support his family?    An honest man could truthfully say:    "Though I am enfeebled by sickness

and racked with pain, I work because I must do it, or my family will be in want." A man in the daily performance of very hard and exhausting labor would scarcely be able to make others believe that he was an invalid and a sufferer, unless he gave some good reason for continuing to toil. He might give one that would be accepted as satisfactory. In the absence of any, he would most probably be classed as sound and well, and attempting to deceive for a selfish and dishonest purpose.

We are free from doubt that, for the purpose for which the court below held the testimony now under consideration competent, it was admissible. See, in this connection, *Railroad Co.* v. *Ware*, 112 *Ga.* 663, in which this court held that proof of a fact not alleged in the plaintiff's petition as a ground of recovery was nevertheless admissible if, during the progress of the trial, the same became collaterally pertinent. The comments of Mr. Justice Lewis on pages 664 and 665 are, in principle, applicable to the present case. The ruling made in *Central Railroad* v. *Rouse*, 77 *Ga.* 393, relied on by counsel for the plaintiff in error, is not at all in point. The decision there was simply to the effect that in the trial of an action by a widow for the homicide of her husband, neither the number of her minor children nor their means of support were, so far as related to the measure of damages, matters in issue; and accordingly, a charge recognizing "an estimate made upon what would be required to support the wife and children in arriving at the amount of damages" was held to be erroneous (page 408). The value of the life was the measure of the damages, and it was necessarily the same whether the deceased had many or few children, or whether they were well provided for or not. The correctness of the doctrine laid down in the *Rouse* case was, at the very outset of this discussion, conceded. We were asked to overrule the decision in *Wilson* v. *White*, 71 *Ga.* 506, to the effect that it was competent for the plaintiff, in an action for personal injuries, to testify that after receiving the same she was without means and was forced to sell her house and lot to raise money for her support, the court ruling that "such testimony was not irrelevant in the ascertainment of general damages resulting directly from the wrong of which she was the victim." Though of the opinion that the correctness of this decision may well be doubted, it is not now necessary to so decide; for this case is no more in point than the

one last cited supra. The court held that the testimony of Mrs. White indicated above was pertinent with respect to the measure of damages. This ruling, whether right or wrong, has no bearing on the question in hand; for in the present case the court allowed Barnes to testify as stated, solely for the purpose of explaining why, though professing to be a sick and suffering man, he kept up his work. It would have been entirely proper for the defendant's counsel to have requested a distinct instruction that the jury should not consider this testimony for any other purpose. This end could not, however, be legitimately accomplished by objecting to the testimony as irrelevant and inadmissible for any purpose whatever.

At the time he was injured Barnes was, and for many years previously had been, the official stenographer of the Macon circuit; and he was, when the trial below was had, still holding this office. It was a part of his work to take down stenographic notes of testimony and afterwards write out such portions thereof as were needed. Over an objection that there was in his petition no allegation of damages "by reason of the employment of typewriters," he was permitted to testify that he had employed young ladies as typewriters, and that he was then paying one $25 per month. While Barnes could not, of course, recover damages for which he had not sued, it was allowable for him to support by any competent testimony an allegation distinctly made in his petition that, because of his injuries, his capacity to labor had been diminished. He had, before being allowed to testify as just stated, sworn that on account of his injuries he had become unable to do in person all his work, and could no longer do that part of it which necessitated continued use of a typewriting machine. In view of this, it seems clear that the additional proof to the effect that he was obliged to employ help at least tended to show decreased power to labor, and the cost of the help was relevant as to the extent of the decrease. No point was made that the cost was not necessarily the value of the work for the performance of which Barnes contracted. The objection was simply as above stated, and it was not well taken. If, as above remarked, counsel for the defendant had desired to have the jury restricted in their consideration and application of this testimony, they should have taken the course there indicated.

2. During the progress of the trial, the court admitted in evidence an ordinance of the City of Macon requiring the cars of every street-

railway company to be stopped before crossing the track of any other company. There was evidence tending to show that, shortly before Barnes was thrown from the car, it had, without first being brought to a standstill, crossed the track of another company. In this connection the judge charged that if the car of the defendant was not stopped at this crossing, and the failure to stop contributed to its derailment, such failure could be considered in determining whether or not the defendant was negligent. The motion for a new trial assigns error upon admitting this evidence, and upon the charge just mentioned. From a note to the motion it appears that the judge also charged that if there was a failure to stop, yet if the same did not contribute to the derailment, such failure could not be considered in passing upon the question of the defendant's alleged negligence. In the plaintiff's petition, to which no demurrer was filed, he distinctly alleged that the company's failure to comply with its duty to stop its car before passing over this crossing directly contributed to the derailment of the car, and the brief of evidence discloses that almost immediately after the car had gone over the crossing the derailment occurred. It is therefore unnecessary to enter into a discussion of the questions presented by those grounds of the motion for a new trial to which we have just referred, for the rulings made by this court in *Air-Line Ry. Co.* v. *Gravitt*, 93 *Ga.* 369, upon questions involving the same principle, are directly in point and are controlling. See 6th headnote on page 370, and corresponding division of the opinion, beginning on page 409.

3, 4. The court, among other things, charged the jury as follows: "The duty of the defendant company in engaging to carry passengers for hire is to exercise extraordinary care and diligence; that is, that extreme care and caution which very prudent persons exercise in securing and preserving their own property. It is the duty of the defendant to exercise that care and diligence, not only in the construction of the road and the laying of the rails, but in the maintenance of that road and those rails; and it is the duty of the defendant that extreme care and caution be used in the management of its cars, through its operatives and employees. And if you find that the defendant was negligent in either of these respects, and that negligence was the proximate cause of this derailment of the car, and the injury, and the plaintiff could not have avoided the consequences of that negligence by the exercise of ordinary

care, the plaintiff would be entitled to recover." One assignment of error upon this charge presents the point that in using the phrase, " and it is the duty of the defendant that extreme care and caution be used in the management of its cars," the court stated the rule of extraordinary diligence too strongly against the company. Taken by themselves, the words quoted might be subject to the criticism thus made and bring the objection to them within the ruling announced in *Railway Co.* v. *Miller,* 95 *Ga.* 738; but, as his honor had just limited and explained the meaning of "extreme care and caution" by the addition of the qualification expressed in the words "which very prudent persons exercise in securing and preserving their own property," we do not think the point stated is meritorious, the more especially as we find, from an examination of the entire charge, that the judge elsewhere very fully and accurately instructed the jury as to what constituted extraordinary diligence.

Another complaint of the charge under consideration is that the court erred in charging "the jury that said extreme care and caution applied to the construction of the road and the laying of the rails, and also in the maintenance of said road and rails." It was earnestly insisted in the argument here that railway companies are, relatively to passengers, bound to only ordinary diligence in constructing and keeping up their tracks. We are unable to find any reason or precedent for thus limiting their liability. Nothing can be more free from doubt or question than the proposition that railway companies are bound to exercise extraordinary diligence in protecting their passengers from injury. It is not logical or sound to say that this requirement can be met by managing with such diligence cars upon a track built or kept up with diligence of a less degree. The track is just as essential a thing in the transportation of passengers by rail as is the car in which they ride. A railway car can not be successfully or safely run except upon a track, and a railway company can not lawfully, either as to car or track, be wanting in extraordinary diligence towards passengers without becoming responsible in law for the consequences. The rule of extraordinary diligence is fixed and unvarying. It requires the observance of that extreme degree of care and caution which very prudent and thoughtful persons exercise in and about any given matter. What does, or does not, amount to extraordinary diligence

varies with circumstances.   For instance, such diligence might require that the track of the Pennsylvania Railroad between Philadelphia and New York should be laid with steel rails, weighing not less than eighty-five pounds to the yard, upon cross-ties ten inches thick and showing a face of twelve inches, and that the entire structure should be thoroughly ballasted with stone.   If very prudent and thoughtful persons would, in view of the volume of passenger traffic, contemplated speed of trains, etc., etc., regard such construction as essential, nothing inferior thereto would come up to the standard of extraordinary diligence.   Yet, no one would venture to say that this degree of diligence would require such a track to be built for a street-railway in a town of 3,000 inhabitants.   In a town of that size, and for a railway upon which it was designed to operate cars by horse-power at a correspondingly limited rate of speed, much lighter rails, much smaller ties, and ordinary ballast would, in the judgment of very prudent and thoughtful persons, be all-sufficient for the proper and safe transaction of the expected business.   In larger towns, or in cities, or with more dangerous motive power, greater strength of materials and more care in construction would be necessary.   In any given instance the test should be: does this road, in view of all the circumstances and surroundings, come up to what persons of the character mentioned would regard as essential to its safe operation ?   It ought not, of course, to require argument to show that as to the matter of keeping the track in repair there should be no relaxation of the rule.

5. Two grounds of the motion for a new trial allege that the court erred in stating to the jury certain contentions of the plaintiff which could not lawfully be the basis of a recovery.   The reply is that these contentions are set forth in the plaintiff's petition by allegations specifically made, and it does not appear that there was any demurrer to the same.   If the defendant was content to go to trial without challenging the legal sufficiency of these allegations, it has no right to complain that the court called the attention of the jury to them.

6, 7. Complaint is made of the following charge:   " The burden is on the plaintiff to establish the truth of the allegations in the declaration by a preponderance of the testimony ; that is to say, in a case of this character it is incumbent upon the plaintiff to establish the fact that he was a passenger upon the car and was injured ;

and when he has established that by a preponderance of the evidence, or made it appear by any admissions in the pleadings, satisfactory to you, as to the fact that he was a passenger and was injured, or established it by evidence to a reasonable and moral certainty, then the law shifts the burden, and it is incumbent upon the defendant to establish by a preponderance of the evidence one of two facts, either that it was without negligence, or that the plaintiff could have avoided the consequence of the negligence by the exercise of ordinary care." The plaintiff in error contends that this charge was erroneous: " 1st. Because it limited the defense to two propositions, as follows: either that it was without negligence, or that the plaintiff could have avoided the consequences of the negligence by the exercise of ordinary care: whereas, plaintiff contends, they could have successfully defended by showing that the plaintiff was guilty of contributory negligence which would have reduced the amount of his recovery in proportion to his negligence, and if the jury should believe that his negligence was greater than that of the company, he could not recover at all. 2nd. Because it did not permit the jury to consider the defense that said injury was caused by an unavoidable accident." In this connection the court certifies: " The doctrine as to contributory negligence fully given elsewhere in the charge." We have verified this statement, and find that, taking the charge as a whole, it did, with all needful accuracy and fullness, submit to the jury the law of contributory negligence and apportionment of damages. The charge complained of was, in view of the evidence, substantially correct. It was certainly not rendered erroneous because the court did not in the same connection charge upon contributory negligence. "A failure to charge a proposition of law applicable to the case can not be taken advantage of by assigning error on a charge that is abstractly correct." *Wood* v. *Collins*, 111 *Ga.* 32. Nor was the charge now being dealt with open to the objection that "it did not permit the jury to consider the defense that said injury was caused by an unavoidable accident." The court fully explained to the jury what constituted an unavoidable accident, and distinctly instructed them that if the plaintiff was injured because of such an accident, the defendant was not liable. Even if this had not been done, it would seem that a jury of ordinary intelligence could not fail to understand that if the defendant showed that the plaintiff's

injuries were the result of such an accident, it necessarily showed that they were not caused by its negligence; or, in other words, that relatively to his injuries it was free from negligence.

8. Error is assigned upon the following charge to the jury: "You give credit to that testimony you think best entitled to credit, under all the evidence in the case. The jury are not bound by the mere sayings of any witness. If the mere sayings of a witness are in conflict with the well-recognized facts, that is, the facts which appear to the jury from the evidence; if the testimony of that witness is inconsistent with reason or inconsistent with those facts, the jury are not bound by the testimony, however solemn the oath may be under which the witness gives the testimony. The jury find, not according to the mere sayings of the witnesses, but according to the opinion you may entertain of the evidence." The grounds of objection to this charge are, that it tended to confuse and mislead the jury, and drew "an improper distinction between the oral testimony of the witnesses and the facts testified to by them." We do not think the charge is open to these criticisms. Evidently the court, in referring to the "mere sayings" of a witness or witnesses, intended to convey the idea that the jury were not bound to accept as true the statements made by the witness or witnesses in testifying, provided the same were inconsistent with reason or in conflict with facts which, in the opinion of the jury, had been satisfactorily established. Had the court used the word "statements," instead of the word "sayings," the objections to the charge would be hypercritical. Giving it a fair and reasonable interpretation, we are of the opinion that it was not calculated to confuse or mislead the jury. Indeed, had the verdict been favorable to the defendant company, we are fully satisfied that its able counsel would quite agree with us that it could not fairly be assumed that the jury were unable to gather the true import of this instruction, and that, accordingly, the giving of it would not have afforded cause for granting a new trial.

9. It is in one ground of the motion alleged that the court erred in refusing a written request to give in charge to the jury the following: "If you find that defendant's illness has been either aggravated or prolonged by the lawsuit that has been brought against the defendant to recover damages for such injuries, the defendant would not be liable in damages for either such aggravation or pro-

longation of his sickness." Obviously this request, as worded, does not make good sense, and it can not, therefore, with any sort of propriety, be said that the court ought to have given it in charge. We took the pains to order the clerk of the trial court to send up a second transcript of the ground mentioned. He did so, and it was in the precise wording of the first. Undoubtedly, when counsel for the defendant wrote the words "defendant's illness," there was an intention to write "plaintiff's illness;" but we can not consider this ground in the light of what was intended. We must do so in the light of what was actually done. Were we to hold that the trial judge ought to have corrected the request and then have dealt with it, we would be going a length which we are satisfied would be unwarranted, for there is no independent complaint that he failed to charge the proposition which the request would in corrected form have embraced. Whether such a proposition would or would not have been good law we do not now undertake to decide.

10. The court compelled defendant's counsel to produce a diagram, or map, which they had caused to be made of the scene of the catastrophe, but it was not tendered in evidence nor in any manner used during the trial. Plainly, if any error was thus committed, it would not justify a reversal of the judgment, for the reason that no injury to the defendant resulted from the action taken by the court in the premises.

11. In other grounds of the motion exception is taken to the court's refusal to give in charge three other written requests, and also to an extract from instructions given upon the law of contributory negligence. We have carefully examined these requests. They are in some respects open to criticism. As far as they are legal and pertinent, we think they were sufficiently covered by the general charge upon the subject of contributory negligence and apportionment of damages, which was very full and notably fair and impartial. The extract from the charge just referred to may not have been precisely accurate; but if it contained any error, the same was, in view of the whole charge, manifestly harmless.

12. There was ample evidence to warrant a finding that the curve upon which the derailment occurred was not properly constructed, and that the car was being run at a dangerously high rate of speed; also, that Barnes was exercising all ordinary care and diligence. As to all these matters there was much conflict in the testimony,

but the trial judge was satisfied with the jury's conclusion that the company was wanting in due diligence and that Barnes was not at fault. This being so, we can not say that the verdict was contrary to either the law or evidence. We have carefully read every word in the brief thereof, and have given it deliberate study and consideration. After so doing, we are not prepared to hold that the verdict was excessive in amount. Barnes was a young, vigorous, and perfectly healthy man, capable of earning, and actually earning, $3,000 per annum. He suffered a great physical shock, and has endured constant and agonizing pain. His hearing has been impaired, his sexual powers are gone, and he was at the trial very far from being a well or strong man. Several physicians testified that his injuries did not appear to be of a permanent character, and predicted a full recovery. Not one of them, however, could undertake to name a time when this would come. A physician testifying in behalf of the plaintiff expressed the opinion that Barnes would never "be the same as he was before the injury," though the probability was that his condition would be improved by the lapse of time; while another expert witness stated that he was "not prepared to say" as to "Barnes getting well ultimately," and declined to express any opinion as to how long his sickness would continue, saying: "I can not tell how long before he will get well, and I don't think anybody can tell." From the testimony as a whole the jury would have been warranted in finding that the plaintiff would never fully recover, but would continue to suffer more or less from his injuries to the end of his days. A limited number of years of seriously diminished capacity to labor and earn money would, in connection with a reasonable allowance for pain and suffering, carry the verdict up to $10,000. It is true that, at the time of the trial, Barnes was performing his duties as court stenographer and was earning his fees as such with an outlay of only $25 per month; but no mortal man, not even the most learned of physicians, could give him a perfectly safe assurance that this state of things would continue indefinitely. The jury saw Barnes and heard his recital of his injuries and his condition at the trial. They may have preferred to follow their own judgment as to his chances of complete recovery than to accept as absolutely reliable the theory of medical experts who expressed the opinion that he would ultimately regain his former strength and vigor, but according to whom this most desirable condition might be post-

poned for years.  On the whole, we find no cause for ordering a new trial.  *Judgment affirmed.*  *All the Justices concurring.*