GLEASON *v.* LOWE.

1. Highways and Streets — Motor Vehicles — Statutes — Displaying Light.

Act No. 126, Pub. Acts 1921, making it unlawful to drive any vehicle drawn by horses upon any trunk line highway from one hour after sunset to one hour before sunrise, without displaying a light on the left side, fixes the time for displaying lights regardless of darkness or weather conditions.[1]

2. Same — Negligence — Motor Vehicles — Contributory Negligence — Failure to Display Light.

If the driver of a horse-drawn vehicle was injured by collision from the rear one hour after sunset, his failure to display a light, as required by statute, was negligence *per se*, but to constitute contributory negligence, barring recovery, it must have contributed to the injury.[2]

3. Same — Causal Connection Between Violation of Statute and Injury Question for Jury.

Whether there was any causal connection between failure by driver to display light required by statute and injury

[1]Highways, 29 C. J. § 410; [2]Id., 29 C. J. §§ 421, 429

On effect of fact that driver of automobile is blinded by glare of light as affecting liability for automobile accident, see notes in 10 A. L. R. 294; 32 A. L. R. 887.

On admissibility on question of damages for personal injuries of amount paid for services of substitute during incapacity, see note in 30 L. R. A. (N. S.) 737.

to him by collision from the rear, *held*, a question for the jury.[3]

4. SAME—INSTRUCTIONS.

An instruction that any failure as to a specific duty imposed by statute, however slight, would bar recovery, sufficiently covered the applicable law requiring causal connection between violation of the statute and injury, and, where amplified by other instructions, must have been understood by the jury.[4]

5. SAME—DUTY OF MOTORIST TO HAVE CAR UNDER CONTROL NOT MODIFIED BY STATUTE REQUIRING HORSE DRAWN VEHICLE TO DISPLAY A LIGHT.

The rule that a motorist must drive his vehicle so that he can stop it within the range of his vision is in no sense qualified by the statute which requires a light to be displayed upon a horse-drawn vehicle driving upon a trunk line highway one hour after sunset.[5]

6. SAME — WHETHER MOTORIST BLINDED BY LIGHTS ORDINARILY PRUDENT IN GOING AHEAD QUESTION FOR THE JURY.

Whether the driver of an automobile, who claimed he was blinded by the bright lights of an approaching automobile, was ordinarily prudent or was careless in going ahead for 300 feet, when he ran into the rear of a wagon which was not displaying a light as required by statute, *held*, a question for the jury, taking the view most favorable to him.[6]

7. APPEAL AND ERROR—OMISSION TO INSTRUCT RELATIVE TO LIMITING FUTURE DAMAGES TO PRESENT WORTH CURED BY REMITTITUR.

Error of the trial court in omitting instruction relative to limiting future damages to the present worth may be cured by remittitur, since such error is reflected in the amount of the verdict only, but whether the error calls for reversal or mere remittitur is a question dependent for answer upon moral conviction of the demands of justice in a particular case.[7]

8. DAMAGES — EVIDENCE — TESTIMONY AS TO AMOUNT PAID FOR LABOR INCOMPETENT.

In an action for personal injuries, in the absence of pleading special damages, evidence as to amount plaintiff paid for labor on his farm which he was unable to perform by reason of his injury, was incompetent.[8]

---

[3]Highways, 29 C. J. § 434; [4]Id., 29 C. J. § 435; [5]Motor Vehicles, 28 Cyc. p. 29; [6]Id., 28 Cyc. p. 49; [7]Appeal and Error, 4 C. J. § 3036 (Anno); [8]Damages, 17 C. J. § 315.

**9. SAME—MEASURE OF DAMAGES.**

In such case, the true measure of plaintiff's loss is the value, in the open market, of the labor and services which he had been able to perform before the injury and was thereafter unable to perform.[9]

**10. APPEAL AND ERROR—MISCARRIAGE OF JUSTICE.**

Error in the admission of evidence as to amount plaintiff paid for farm labor he was unable to do did not result in a miscarriage of justice (3 Comp. Laws 1915, § 14565), in view of his qualifying testimony as to prevailing reward of farm labor at the time.[10]

**11. SAME—EMOTIONAL DEMONSTRATIONS NOT PROPER—MISCARRIAGE OF JUSTICE.**

Permitting plaintiff, while on the witness stand, to exhibit the claimed effect of his injuries by emotional demonstrations, and permitting other witnesses to state that what the jury saw was characteristic of plaintiff's condition, while not approved, *held*, not to have resulted in a miscarriage of justice.[11]

**12. DAMAGES—CURING ERROR BY REMITTITUR.**

A verdict for personal and other injuries for $6,261, which the trial court reduced to $5,500 because of omission to instruct relative to limiting future damages to the present worth, is affirmed by the Supreme Court on condition that it be remitted to $5,000.[12]

Error to Kalamazoo; Weimer (George V.), J. Submitted June 16, 1925. (Docket No. 77.) Decided October 1, 1925.

Case by William A. Gleason against Joseph H. Lowe for personal and other injuries. Judgment for plaintiff. Defendant brings error. Affirmed, conditionally.

*Linsey, Shivel & Smedley* and *Harry E. Howard,* for appellant.

*Adams & Van Horn* and *Mason & Sharpe,* for appellee.

---

[9]Damages, 17 C. J. § 196; [10]Appeal and Error, 4 C. J. § 2962; [11]Id., 4 C. J. §§ 2929, 2952; [12]Damages, 17 C. J. § 408.

WIEST, J. Plaintiff is a farmer. November 7, 1921, he had occasion to go to the village of Comstock to get coal. At the village he loaded the coal in his lumber wagon, and started for home at the edge of the evening. While driving his team east, on the right side of a State trunk line highway having a 16-foot paved center, his wagon was struck from the rear by an automobile driven by defendant, he was injured, his wagon broken and one of his horses crippled so it had to be killed. He brought this suit to recover damages for personal injuries and to his property, and had verdict and judgment, now under review by writ of error. Defendant claims excuse for his act, asserts plaintiff was violating the law in not having a light on his wagon, and was, therefore, guilty of contributory negligence, and avers errors in rulings and instructions.

Act No. 126, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 4865 [7]), makes it unlawful to drive any vehicle drawn by horses upon any trunk line highway from one hour after sunset to one hour before sunrise, without displaying, on the left side of the vehicle, a light of a character plainly to be seen from the front or rear at a distance of not less than 300 feet. Plaintiff had no light. The sun set, the day of the accident, at 4:30 p. m. There was a dispute about the exact time of the accident; defendant claiming it was after 5:30 p. m., and plaintiff that it was before that hour. Considerable testimony was taken bearing on this question and whether it was dark. The statute, in fixing the time for displaying a light as one hour after sunset sets a known time, regardless of darkness or weather conditions. If the collision was one hour after sunset plaintiff was driving in violation of the statute and was guilty of negligence *per se.* Such disobedience, however, to have bearing in the nature of contributory negligence, in an action by

the offender against one causing him an injury, must contribute to the injury. *Syneszewski* v. *Schmidt,* 153 Mich. 438; *Spencer* v. *Phillips & Taylor,* 219 Mich. 353; *Beebe* v. *Hannett,* 224 Mich. 88. It was a question of fact for the jury whether there was any causal connection between the statutory violation of plaintiff and the injury occasioned by defendant. *Arvo* v. *Delta Hardware Co.,* 231 Mich. 488. Counsel for defendant recognized this rule, asked the court to so instruct the jury and feel this was not sufficiently covered in saying:

"Any want of due care or any failure as to a specific duty imposed by the statute on the part of plaintiff, in (if) any, however slight, which contributed to the accident would bar recovery."

Possibly this could have been made more emphatic but hardly more comprehensive. It fully stated the applicable law, was amplified by other instructions and must have been fully understood by the jury.

The trial judge instructed the jury:

"As I shall try to show to you presently, every man must operate his automobile so that he can stop it within the range of his vision, whether it be daylight or darkness. It makes no difference what may obscure his vision, whether it be a brick wall or the darkness of nightfall. He can't see, he can't operate. He must be able to see where he is going. * * * As I said to you a moment ago, there are other duties imposed on motorists, automobilists, by well settled law of this country, of this State. One is, that the operator of an automobile must keep a proper lookout ahead. He must see that which is there to be seen in the path of his automobile. He must keep his automobile under control. He must be able to stop within the range of his vision, whether that vision be obscured by obstacles or buildings in daylight or by darkness by night. No man may be permitted to operate an automobile with its weight, power and speed in darkness; if he can't see, he must stop. He must, as I said to you a moment ago, be able to see where he is going, and if his range

of vision is 50 feet, if he can see 50 feet ahead of him, he must regulate his speed so that he can stop in a distance of 50 feet; if he can see 20 feet ahead of him, he must regulate his speed so that he can stop within 20 feet, and so on.

"It is well settled that it is negligence as a matter of law to drive an automobile along a public highway in the dark at such speed that it cannot be stopped within the distance that objects can be seen ahead of it."

It is said this held defendant to too great a degree of care and made him a guarantor of plaintiff's safety and:

"The rule that a motorist must drive his vehicle so that he can stop it within a range of his vision, is qualified by the statute which imposes the duty upon a horse-drawn vehicle to have a light thereon in driving upon a trunk line highway, one hour after sunset. The court erred in failing to so modify this rule in his charge to the jury."

The elementary rules of care, stated by the court, are in no sense qualified by the statute requiring a light to be displayed on a wagon. That statute remits no precautions to be taken or care to be exercised by an automobile driver. Defendant was not entitled to any modification of such rules. Defendant claimed at the trial that the accident happened an hour and a quarter after sunset; that, when he was about 300 feet from the place of the accident, he was, to some extent, blinded by the bright lights of an approaching automobile; this caused him to use his dimmers, shut off the gas, slow down his speed, employ his foot brake and keep a lookout and he did not see the wagon until within 8 or 10 feet of it, and hit it because he could not stop; but, if there had been a light on the wagon, he would have probably stopped 50 or 75 feet back. Defendant's claim that he was blinded by the bright lights of an approaching automobile, taken in

its most favorable aspect, presented a question for the jury of whether, under such circumstances, he was ordinarily prudent or was careless in going ahead while unable to view the way. See *Jolman* v. *Alberts,* 192 Mich. 25. Cases on this subject are quoted in annotations in 10 A. L. R. 294; 32 A. L. R. 887.

We held in *Budnick* v. *Peterson,* 215 Mich. 678, that, if the vision of the driver of an automobile is obscured by glaring lights of an approaching car it is his duty to slacken his speed and have his car under such control that he can stop it immediately, if necessary. This was the measure of defendant's duty, and the duty of plaintiff to display a light on his wagon an hour after sunset did not at all lessen or modify defendant's duty.

Plaintiff claimed permanent injury, future loss of earnings and compensation for prospective pain and suffering.

The learned circuit judge inadvertently omitted instruction relative to limiting such future damages to the present worth thereof. In denying a motion for a new trial the circuit judge recognized the error, and felt it could be cured if plaintiff was required to remit $761 of his verdict. Remittitur was filed and thereafter judgment entered for $5,500. We have found such an error cured by remittitur. *Gallagher* v. *Monroe,* 222 Mich. 202; *Sweeney* v. *Moreland Bros. Co.,* 227 Mich. 203. Such an error is reflected in the amount of the verdict only, and if we can cure the error without injury we will do so. We have also reversed judgments for such error. *Denman* v. *Johnston,* 85 Mich. 387; *O'Brien* v. *Loeb,* 229 Mich. 405. Whether the error calls for reversal or mere remittitur is a question dependent for answer upon moral conviction of the demands of justice in a particular case. Defendant's counsel insist the error was not at all cured by the small amount remitted, while

counsel for plaintiff deem it adequate, and attempt mathematical demonstration.

The trial was two years and ten months after the accident, and plaintiff's compensation for loss of earnings and pain and suffering stands apart from the rule of present worth, as does the damage to his wagon, the value of the horse and the expenses of medical service.    At the time of the trial plaintiff was 62 years of age and had an expectancy of about 12 years.    But, of course, as he aged his ability to labor would be less, as every person is aware, and we are persuaded that, at the outside, had the jury found the present worth of prospective damages it would not have reduced the verdict below $5,000.    Plaintiff was entitled to compensation for lessened ability to labor and earn money.    He claims he was compelled to hire labor to do the work he would, except for his injuries, have done himself.    And, over objection, he was permitted to state the amount he had paid for such labor.    Cases are to be found sustaining the right to so recover, but such are based on special pleading.    Counsel for defendant cite *Seabury* v. *Railway*, 194 Mich. 423, where this court stated:

"While we do not agree with the claim of appellant that 'the proper measure of damages is the amount that plaintiff is compelled to pay for labor to do the work that he formerly did which he claimed that he was unable to do after the accident,' we are still of opinion that the true measure of damages should not be based upon the plaintiff's estimate of the value of these services to himself.    The true measure of plaintiff's damages upon this branch of the case would be the value in the open market of the labor and services which he had been able to perform before the injury and which because of the injury he was unable to perform thereafter."

The question in the suit at bar was the effect of the injuries upon the earning capacity of the plaintiff. As stated in *Stynes* v. *Railway Co.*, 206 Mass. 75 (91

N. E. 998, 30 L. R. A. [N. S.] 737), quoting from the syllabus:

"While, upon the question of damages to be awarded for a personal injury, plaintiff, as proof of his personal incapacity to perform labor, may give evidence that he was compelled to employ servants to perform labor formerly done by himself, he cannot show the amount which he is compelled to pay for such service, since it would have no bearing upon the diminished value of his own services."

Opinions are not in accord upon this subject. See *Macon Consolidated Street R. Co.* v. *Barnes,* 113 Ga. 212 (38 S. E. 756), where it was held that evidence of the amount paid for service of substitutes was admissible as bearing on the impairment of the plaintiff's earning capacity.

In *Williams* v. *Edmunds,* 75 Mich. 92, it was said of an allegation that plaintiff was injured, and prevented from transacting her lawful affairs and business, that it was a sufficient pleading to justify recovery for the expense of washing done for plaintiff, which she was unable to do for herself.

In *Ashcraft* v. *Chapman,* 38 Conn. 230, the report discloses no special pleading. The court there held:

"The charge of the judge that the plaintiff was entitled to recover the amount necessarily expended by him for labor on his farm, while he was disabled by his injuries, was unexceptionable. In cases of this character the jury have a right to give as damages any expenses necessarily incurred by the injured party as a direct result of his injuries. The expenses incurred in this case for labor on the farm while he was disabled, and which would have been performed by him had he not been disabled, were clearly of that character."

Plaintiff also testified: "About the time of the accident day labor, farm labor, was worth about $3 per day."

We think, in the absence of pleading special damage,

the evidence complained of was incompetent. The true measure of plaintiff's loss is the value, in the open market, of the labor and services which he had been able to perform before the injury and was, thereafter, unable to perform. In view, however, of his qualifying testimony as to the prevailing reward of farm labor, we cannot see that the error complained of has resulted in a miscarriage of justice. 3 Comp. Laws 1915, § 14565. The same applies to the testimony of another witness that he tried to hire, through the State employment bureau, men to draw manure, and offered to pay $5 a day, but could not obtain them for the wage offered.

Plaintiff, while on the witness stand, exhibited the claimed effect of the injuries by emotional demonstrations. Other witnesses had described the same demonstrations on his part before the trial, and were permitted to state that what the jury saw was characteristic of plaintiff's condition. We do not approve of this, but cannot find it caused a miscarriage of justice. Other assignments of error have no merit.

If plaintiff, by remittitur, filed within ten days, reduces the judgment to $5,000 it will stand affirmed at that amount, otherwise reversed. In either event defendant will recover costs of this court.

McDONALD, C. J., and CLARK, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred. SHARPE, J., did not sit.