### STRONG *v.* KITTENGER.

1. AUTOMOBILES—INTERSECTIONS—CONTRIBUTORY NEGLIGENCE.

Normally, when two cars collide on a bright clear day at the intersection of thoroughfares of equal importance, both drivers are to blame as it becomes the duty of both drivers to slow down and respect each other's rights.

2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—INTERSECTIONS.

Contributory negligence of driver of car in which plaintiff's decedent was riding *held,* a question for the jury where such car and defendants' car collided at an intersection of two dry, graveled roads of equal importance on a day when the visibility was clear and the view unobstructed after defendants' easterly driven car had been seen by decedent's driver to have slowed down as if to give him the right of way but thereafter continued at great speed so as to collide with northbound car after it had partially crossed the middle of the intersection.

Need of causal relation to make actor's conduct contributory negligence, see 2 Restatement, Torts, § 462. Violation of statute as contributory negligence, see 2 Restatement, Torts, § 469. Function of court and jury on question of contributory negligence, see 2 Restatement, Torts, § 476; also, §§ 289, 290 and comment n.

3. SAME—INTERSECTIONS—RIGHT OF WAY.

   Driver of car in which plaintiff's decedent was riding who approached intersection of two roads of equal importance from defendant driver's right was thereby entitled to technical right of way (1 Comp. Laws 1929, § 4712).

4. SAME—INTERSECTIONS—RIGHT OF WAY NOT AN ABSOLUTE RIGHT.

   The statutory right of way for driver at the right as an intersection of two roads of equal importance is approached by two motorists simultaneously is not an assurance of safety or of an absolute right under all conditions (1 Comp. Laws 1929, § 4712).

5. SAME—INTERSECTIONS—RIGHT OF WAY—CONTRIBUTORY NEGLIGENCE.

   The fact that a motorist has the right of way at an intersection may tend to acquit him of contributory negligence in the absence of opposing circumstances.

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

   Precise rules by which all acts of contributory negligence may be measured cannot be laid down as what one does or fails to do as related to the circumstances under which he acts is the test to be applied.

7. SAME—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

   In determining whether or not a plaintiff in a personal injury case has been guilty of contributory negligence as a matter of law, the test applied is whether the minds of reasonable men can honestly reach different conclusions.

8. AUTOMOBILES—NONTRANSPARENT MATERIALS IN WINDOWS—STATUTES.

   The placing of a piece of sheet metal extending up about six inches in left front window of car was in violation of statute making it unlawful to place any nontransparent material upon windows of automobiles (1 Comp. Laws 1929, § 4734).

9. SAME—SHEET METAL IN WINDOW—STATUTES—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE—QUESTION FOR JURY.

   While the presence of sheet metal partially covering the left front window of northbound car in which plaintiff's decedent was riding was in violation of a statute and negligence *per se*, it would not preclude recovery by plaintiff unless it was a contributing cause of death following collision with eastbound automobile at an intersection and whether or not it was such a contributing cause was a question of fact for the jury (1 Comp. Laws 1929, § 4734).

10. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

Consideration of errors on appeal in an action at law is confined to errors presented by defendants' statement of questions involved (Court Rule No. 67, § 1 [1933] ).

11. DEATH—DAMAGES—HUSBAND'S LOSS OF WIFE'S SERVICES—INSTRUCTIONS.

In action by administrator of estate of wife killed in automobile collision, instructions as to husband's loss of wife's services *held*, to have made it clear that plaintiff could recover only for pecuniary loss sustained by husband by reason of loss of wife's services during his lifetime (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

12. APPEAL AND ERROR—INSTRUCTIONS—REQUEST TO CHARGE—DAMAGES—WIFE'S SERVICES—DEDUCTIONS FOR MAINTENANCE.

Instructions in administrator's action for damages for loss of wife's services may not be held erroneous because of failure to require deductions of cost of maintenance of wife from the value of her services where no request for instruction as to such deduction had been made (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

Appeal from Jackson; Williams (Benjamin), J. Submitted October 15, 1941. (Docket No. 68, Calendar No. 41,586.) Decided January 5, 1942.

Case by Edgar Strong, administrator of the estate of Adelia Bassett, deceased, against Harry Kittenger and Keith Kittenger for injuries resulting in death sustained by plaintiff's decedent in an automobile collision. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Kim Sigler,* for plaintiff.

*Bisbee, McKone, Badgley & McInally,* for defendants.

STARR, J. This case involves an automobile accident, occurring Sunday afternoon, May 19, 1940, at the intersection of Ionia county highway 583, run-

ning north and south, and Ionia-Barry county line road, running east and west. Both roads were of equal importance; neither was a "through highway;" and both were graveled at the intersection. There were no signs on either road indicating the intersection. Visibility was clear; the roads were dry; and the vision of both drivers was unobstructed.

Plaintiff's decedent, Adelia Bassett, 57 years of age, was riding in a 1929 Ford sedan, owned by her husband, William Bassett, and being driven north on the Ionia county highway 583 by her 19-year-old son (by a former marriage), Clarence Richardson. Defendant Keith Kittenger, about 20 years old, accompanied by two young people, riding in the front seat with him, was driving his 1936 Ford automobile, registered in the name of his father, defendant Harry Kittenger, east on the Ionia-Barry county line road.

Decedent's driver testified that he was familiar with the road; that he was traveling at a speed of about 25 miles an hour; that, as he approached the intersection, he reduced his speed to about 20 miles and proceeded into the intersection at that speed; that, when he was about 250 feet from the intersection, he saw defendants' car approaching from the west and continued to observe such car up to the time of the collision; that, when he was about 50 to 75 feet from the intersection and defendants' car was about 150 to 200 feet from the intersection, the latter started to slow down; that he had the right of way and, when defendants' car slowed down, he believed it was going to stop and give him the right of way. He further testified that at a speed of 25 miles an hour he could stop his car in a distance of 15 to 20 feet.

Defendant driver testified that he was not familiar with the road; that he approached the inter-

section at a speed of from 35 to 38 miles an hour; that he did not slow down; that he did not see the car in which decedent was riding; that he did not see the intersection; and that he did not look to the right or left.

Neither driver sounded his horn or applied his brakes. The cars collided at about the middle, or a little north, of the intersection, the right front wheel of defendants' car striking the left front wheel of decedent's car. Plaintiff's decedent sustained a broken neck and other injuries and was unconscious when examined by a physician at the scene of the accident. She was removed to the Hastings hospital, regained consciousness, and asked about members of her family and what had happened. She died within an hour or two after reaching the hospital.

At the conclusion of plaintiff's proofs defendants moved for directed verdict on the ground that decedent's driver was guilty of contributory negligence as a matter of law. The court denied such motion, saying:

"There is a question of fact involved which should be submitted to the jury."

The case was submitted to the jury, which returned a verdict of $2,000 for plaintiff, and judgment was entered on such verdict. Defendants' motion for a new trial was denied, the court saying:

"It is believed there was a fair question for the jury on which the minds of reasonable men might differ; that the case was properly submitted, and that therefore the motion for a new trial should be denied."

Defendants' "statement of questions involved" raises no question as to defendant driver's negli-

gence nor as to the verdict's being against the great weight of the evidence. Therefore, the question on this appeal is whether or not decedent's driver was guilty of contributory negligence as a matter of law, which would be imputed to decedent and bar recovery by plaintiff.

On direct examination decedent's driver testified:

"*Q.* Did this same relative distance, that is, or speed, continue? That is to say, did he continue to come at about three times as fast, would you say, as you were?

"*A.* When we got about that close, why, I noticed that he started to slow down a little, and I figured he was going to stop; so—

"*Q.* Wait just a moment before we get to that point. You said there did come a time when he was down the road there the distance that you just a moment ago testified to, when you made some determinations concerning his speed. How fast did you determine he was driving at that time?

"*A.* Well, I figured he was going at least 60 miles an hour.

"*Q.* All right. You then proceeded on toward the intersection?

"*A.* Yes, sir.

"*Q.* You say there came a time when he began to slow down?

"*A.* Yes, just a little.

"*Q.* About how far away would you say he was when he began to slow down?

"*A.* Possibly 100 or 150 feet. Maybe further.

"*Q.* About how far away were you then?

"*A.* Probably 50 feet. * * *

"*Q.* Did you believe that he was going to stop?

"*A.* Yes, sir.

"*Q.* And believing that he was going to stop, did you rely upon his actions in, as you say, slowing down?

"*A.* Yes, sir.

"*Q.* Did you then proceed to the intersection?

"*A.* Yes, sir.

"*Q.* Had you arrived practically at the intersection when you observed that he was not going to slow down?

"*A.* Yes, sir.

"*Q.* When you arrived at the intersection, was he some little distance beyond, back from it?

"*A.* Yes.

"*Q.* Which one of you arrived at the intersection first?

"*A.* I did.

"*Q.* Did there come a time then when you saw he was not going to stop?

"*A.* Yes, sir.

"*Q.* Was that when you were practically at the intersection?

"*A.* Yes, sir.   *   *   *

"*Q.* Could you have stopped at that time?

"*A.* Well, if I would have stopped, I would have been right in the intersection, anyway, in the middle of the intersection.   *   *   *

"*Q.* Did you keep your eyes upon him all of the time?

"*A.* Well, I kept watching him and watching the road too."

On cross-examination decedent's driver testified:

"*Q.* Mr. Richardson, did you figure that you had the right of way there and therefore you could go ahead and he would look out for you?

"*A.* Well, I figured that I was on a county gravel road and he was on the side road and that I would be to the intersection first if he observed the intersection. That was why I figured I had the right of way.   *   *   *

"*Q.* Now, you testified, as you have told us here, that you thought he was going to slack up to that second; and that was the second, as I understand this testimony, just before the impact occurred. Is that what you thought?

"*A.*   Well, I didn't hardly know what to think.

   *   *   *

"*Q.*   What did you mean, Mr. Richardson, when you testified as follows: 'I thought he was going to slack up to that second?'

"*A.*   Well, I figured that he would probably slow up and let me through.   *   *   *

"*Q.*   Didn't you know, Mr. Richardson, that you thought if you both continued at the same speed you were that there would be bound to be a collision there in that intersection?

"*A.*   Well, I did know it, yes.

"*Q.*   But you still continued to go on down there?

"*A.*   Well, as I said before that, he slowed down and gave me some indication of slowing down when he was about that far away, about 150 or 200 feet away; so I figured he was going to stop, and I kept right on a-going.   *   *   *

"*Q.*   You thought he was going to slack up and let you through because you were closest to the intersection, is that right?

"*A.*   Yes, sir.

"*Q.*   Did he slack up?

"*A.*   Yes.   I said he slacked up before.

"*Q.*   Where?

"*A.*   About 150 or 200 feet away from the center of the intersection."

This case is controlled by our decision in *Stuck* v. *Tice,* 291 Mich. 486, in which the facts were very similar.   In that case plaintiff was traveling north on a gravel road, at a speed of about 30 miles an hour, and defendant was traveling east on a dirt road, at a speed of about 50 or 55 miles an hour. Both roads were of equal importance.   The day was clear, and the view of both drivers was unobstructed. Our opinion stated, p. 489:

"As it [defendant] approached the intersection, according to several witnesses, the truck appeared to slow down either for the purpose of stopping or

of making a right-hand turn, and for this reason the driver of plaintiff's car proceeded across the intersection without relaxing his speed. Defendant, however, after slowing down, picked up speed again and the vehicles collided after plaintiff's car had crossed the southerly half of the intersection by six or eight feet. It was further shown that from the position of the car at the time of the impact defendant was on the left or north side of the road."

Mr. Justice BUTZEL, writing for affirmance of judgment for plaintiff, said, pp. 489, 490:

"Normally, under conditions such as these, when two cars collide on a bright clear day at the intersection of thoroughfares of equal importance, both drivers are to blame. The circumstances of the present case, however, take it out of the ordinary rule. When two cars meet at an intersection, it becomes the duty of both drivers to slow down and respect each other's rights. Necessarily one car at some time must pass before the other. When the driver of plaintiff's car kept his eye constantly on defendant's truck, which was seen to have slowed down so as to give the impression that it was going to stop or turn, it became a question of fact whether the driver of plaintiff's car acted prudently in proceeding without anticipating that defendant would suddenly accelerate the speed of his truck and strike plaintiff's car after it was beyond the middle of the intersection in the direction it was traveling. *Rak* v. *Lake*, 271 Mich. 274.  *  *  *  Here the evidence established that plaintiff's driver maintained a continual watchfulness.  *  *  *  Here there was testimony that defendant reduced his speed to stop or turn. A question of fact was presented upon which reasonable minds might differ and it was properly submitted to the jury."

See, also, *Rak* v. *Lake, supra; Stephens* v. *Koprowski,* 295 Mich. 213; *DeVries* v. *Owens,* 295 Mich. 522.

Decedent's driver, approaching from defendant's right, had the technical right of way under 1 Comp. Laws 1929, § 4712 (Stat. Ann. § 9.1580). Such statutory right of way was not an assurance of safety or of an absolute right under all conditions. *Rathburn* v. *Riedel,* 291 Mich. 652. However, in *Stephens* v. *Koprowski, supra,* p. 217, we said:

"In the absence of opposing circumstances, the fact that one driver had the right of way may tend to acquit him of contributory negligence. *Putnam* v. *D. U. R.,* 164 Mich. 342."

In *Thompson* v. *Michigan Cab Co.,* 279 Mich. 370, 373, this court stated:

"Under the legitimate inferences from all of plaintiff's testimony taken in its most favorable light (*Loveland* v. *Nelson,* 235 Mich. 623), did Benjamin exercise that degree of reasonable care that would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury? *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich. 99, 118.

"It is an impossibility to lay down precise rules by which we may measure all acts of contributory negligence. Some cases must, of necessity, stand or fall on their own facts. What one does or fails to do as relates to the circumstances under which he acts is the test to be applied. *Flynn* v. *Kramer,* 271 Mich. 500, 505."

As said in *Stephens* v. *Koprowski, supra,* p. 216:

"The test for our determination is whether the minds of reasonable men can honestly reach different conclusions."

The testimony in this case—that decedent's driver, having the right of way, approached the intersection at a moderate rate of speed, reached the intersection first, was continually watchful of defendant driver's car, saw such car slow down and

believed it was going to stop and give him the right of way—certainly presented a question of fact for the jury as to whether such driver acted in a reasonably prudent manner. *Stuck* v. *Tice, supra; Stephens* v. *Koprowski, supra; Rak* v. *Lake, supra.*

The testimony shows that the left front window of the car in which decedent was riding was broken and that a piece of sheet metal had been inserted in the window opening, extending up about six inches. Decedent's driver testified that such sheet metal did not obstruct his vision, as there were about 10 inches of open space above the metal and that he "could look right over it." Such sheet metal in the window was in violation of 1 Comp. Laws 1929, § 4734 (Stat. Ann. § 9.1602), providing as follows:

"It shall be unlawful for any person to drive any vehicle upon a highway with any sign, poster or other nontransparent material upon the front windshield, side wings, side or rear windows of such motor vehicle."

Defendant contends that such statutory violation made decedent's driver guilty of contributory negligence as a matter of law. There is no testimony indicating that the presence of such sheet metal in the window was a contributing cause of the accident. Such violation of statute was negligence *per se. Holmes* v. *Merson,* 285 Mich. 136; *Westover* v. *Railway Co.,* 180 Mich. 373. However, we have repeatedly held that to preclude recovery by plaintiff such negligence must be a contributing cause of the accident. *Suarez* v. *Katon,* 299 Mich. 38; *Ertzbischoff* v. *Smith,* 286 Mich. 306. Whether or not such statutory violation was a contributing cause was a question of fact for the jury. *Brown* v. *Tanner,* 281 Mich. 150; *Gleason* v. *Lowe,* 232 Mich. 300.

This suit was begun by plaintiff under 3 Comp. Laws 1929, § 14061 *et seq.,* as amended by Act No. 297, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14061 *et seq.* [Stat. Ann. 1941 Cum. Supp. §§ 27.711-27.713]). In their statement of reasons and grounds for appeal defendants allege error in the admission of certain evidence relating to damages recoverable under the above act. We will, however, confine our consideration to those errors presented by defendants' statement of questions involved. Court Rule No. 67, § 1 (1933); *Sebastian* v. *Sherwood,* 270 Mich. 339. Such statement recites as follows:

"Under Act No. 297, Pub. Acts 1939, providing for recovery by administrator for pecuniary injury suffered by husband, did court erroneously charge jury when he failed to instruct them that

"(a) Recovery for pecuniary loss arising out of loss of services of wife must be limited to the life of surviving husband; and

"(b) When he instructed them, that basis for award for services is the fair and reasonable value of those services, and omitted to instruct that cost of maintenance of wife must be deducted?

The court instructed the jury, in part:

"Still another element of damage claimed here, and for which the plaintiff is entitled to recover, is the husband's loss of services of his wife. The testimony shows what she did. You have that in mind, and there is some testimony that such services to be procured in that community would cost six or seven dollars a week. Now, you will determine as best you can how long those services would have continued. In that connection, I have permitted the mortality tables to go in evidence. These tables give the average duration of human life at various ages and show that Mrs. Bassett at the age of 57

years had an expectancy of .16.5 years. The expectance of Mr. Bassett was also put in evidence, and that showed that at 66 years of age he had an expectancy of 10.54 years. Now, these tables are not conclusive, but they show the probable age which a healthy person of a given age may be expected to reach; but, of course, a person might die before the normal expectancy, or he might live longer, depending on various circumstances. Bassett might have died before his wife. You may consider that possibility. In any event, the basis of your award for services to the husband, which the husband has lost and which under the act, as I construe it, are recoverable by the plaintiff in this case, is the fair and reasonable value of those services."

We believe such instructions made clear to the jury that plaintiff could recover only for the pecuniary loss sustained by the husband by reason of the loss of his wife's services during his lifetime.

There was no express instruction that the cost of maintenance of the wife should be deducted from the value of her services. However, as defendants made no request for such instruction, they cannot successfully claim error on that ground. Court Rule No. 37, § 9 (1933); *Moss v. Shreve,* 278 Mich. 665; *In re Einfeldt's Estate,* 286 Mich. 537.

The testimony presented question of fact; and the case was submitted to the jury under proper instructions. Their determination that plaintiff was not guilty of contributory negligence should not be disturbed.

The judgment is affirmed, with costs to plaintiff.

CHANDLER, C. J., and BOYLES, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.